FISCHER *v.* GOLDIE.

MASTER AND SERVANT — PERSONAL INJURIES — ASSUMPTION OF RISK.

A servant who was injured by a hoop thrown out of a planer because of a roller becoming loose in its box, and dropping down on one side, assumed the risk, where it appeared that a

millwright repaired the box that morning in the same manner which had been customary for two months previous, and that, after being repaired, it would run for a time, and then drop out again, with which facts the servant was familiar, and that the danger was not concealed.

Error to Bay; Shepard, J. Submitted January 14, 1903. (Docket No. 42.) Decided March 30, 1903.

Case by William Fischer against William Goldie for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*T. A. E. & J. C. Weadock,* for appellant.

*E. A. Cooley,* for appellee.

MONTGOMERY, J. The plaintiff, a young man, 26 years of age, was employed by the defendant in planing hoops on a planer constructed especially for that purpose. The machine was kept in repair by a millwright. The base of the machine was made of two cast-iron side frames about 36 inches high and about 8 feet long. A general outline of the top of the machine was that of the top of a table. This top was covered with brass plates, upon which the material would work easily. There were three sets of rollers, two rollers in each set; the first set called the "feed" rollers, the second set the "receiving" rollers, and the third set the "discharging" rollers. One roller of each set was adjusted above the top of the table, and the other below, the surfaces of the lower rollers projecting through and above the face of the table, so that, when the two rollers revolved, the material fed into them from the front end on top of the table would be carried through and out the other end. Between the feed rollers and receiving rollers there were two knives attached to one' arbor adjusted below the surface of the table, and extending clear across it, a distance of 28 inches. These knives, instead of being smooth as in an ordinary planer, were

shaped with a tooth that projected up. The cutting edge of the knife formed the hoops, and the teeth separated them; so that each of the knives was composed of a series of upwardly projecting teeth, and between the teeth a knife surface of about an inch and a quarter wide. The knives were placed one on each side of the arbor, which revolved rapidly at a speed of 4,000 revolutions a minute. The knives were covered by a pressure bar, so that pieces would not fly out, and the mechanism was thus concealed from the view of the workman.

The material which was used on the planer was prepared from elm logs. The log is first steamed, and then slices about the thickness of a hoop are cut off from it. These slices, called "sheets," are carried by means of a conveyor to the planer, and are pushed through the feed rolls, so that the revolving knives coming in contact with them plane them and cut them into separate hoops, and the receiving rollers take hold of them and carry them through. The knives extend far enough through a slot in the table to shape, plane, and separate the hoops with a downward stroke. The top rollers were all weighted down at the bearings. The lower rollers worked in solid boxes. The space between the rollers was less than the thickness of a hoop, and in that way purchase upon the "sheets" and the hoops was secured.

The plaintiff observed that the machine was not working properly about one month before the accident, and the millwright fixed it. Again the day of and before the accident he called the attention of the millwright to the fact that it did not seem to be working properly, saying to him that the second set of rollers—that is, the middle set, or receiving rollers—would not draw the hoops through. The millwright, who was charged with the duty of keeping the machine in repair, and who represented Mr. Goldie,—Mr. Goldie not being present,—said he would fix the machine. The millwright went and looked at it, attempted to fix it, said it was all right, and to go ahead with the work. The plaintiff went ahead, and, after putting certain sheets

through the machine, and while leaning over to take up another, one of the hoops which the receiving rollers failed to carry through was caught by the teeth of the knives, forced back through the first set of rollers, struck the plaintiff on the leg above the knee, and ran up his limb, injuring his scrotum and groin, bursting a blood vessel, and doing other injuries, from the effects of which he will never recover.

Plaintiff's claim is that the hoop was thrown back because the lower of the second or receiving set of rollers was permitted to drop down in the box on one side, so that the surface of the roller was below the table, and the sheet, as cut into hoops, lay in the machine, and was not carried through, because the rollers in that condition could not perform their function. It is also the claim of the plaintiff that the manner of attempting to repair this box was improper. But it appears by his testimony that it had been the practice for two months for the millwright to fix this box in the same way, and the rollers would then work all right for a time, and then get out of place again; that he spoke to the millwright about the machine a month before the injury, and he repaired the box by driving tins into it; and again on the morning of the injury the same thing occurred. The plaintiff was as familiar with the methods employed by the millwright to remedy the defect as was the millwright himself. He knew the result which had followed on previous occasions. He must have known that it was simply a question of time when the roller would again drop down. There was nothing concealed or hidden in the danger. The whole machinery was open to his observation, and we think the circuit judge committed no error in holding that the plaintiff assumed the risk. *Wheeler* v. *Berry*, 95 Mich. 250 (54 N. W. 876); *Lamotte* v. *Boyce*, 105 Mich. 545 (63 N. W. 517); *Hayball* v. *Railway Co.*, 114 Mich. 135 (72 N. W. 145).

The judgment is affirmed, with costs.

The other Justices concurred.