EDWARD H. WISE, and LEO H. WISE, trading as
WISE BROTHERS *vs.* CHRISTIAN A. B. ACKERMAN,
an infant under the age of twenty-one years, by
his father and next friend CONRAD ACKERMAN.

*Elevator—Injury to Employé—Ordinary care—Great care
and Caution—Action of Damages—Evidence—Credibility
of Witness—Contradiction of Witness.*

Where an elevator is erected in a factory or warehouse, and is
intended to be used only for the purpose of carrying and trans-
ferring goods and materials from one part of the building to
another, and the employés in the establishment, familiar with
the construction and operation of the elevator, and the purpose
of its construction, ride thereon under a merely implied license,
for their own pleasure or convenience, they must be taken to
accept whatever risk may be incident to such construction and
operation; and in such case they can only require of the defend-
ant the use of ordinary care, either in the construction or opera-
tion of the machine.

But an elevator is in many respects a dangerous machine, and
though it may be primarily intended only as a freight elevator,
yet, if the employés, in the course of their employment, are
authorized or directed to use the elevator as a means of personal
transportation, the employer, controlling the operation of the
elevator, is required to exercise great care and caution, both in
the construction and operation of the machine, so as to render
it as free from danger as careful foresight and precaution may
reasonably dictate. Nothing short of this will excuse the
defendant, unless it appear that the plaintiff himself, or the
person under whom the plaintiff is allowed to claim, was guilty
of direct contributory negligence to the production of the disas-
ter.

Evidence of other similar occurrences, on other occasions, is not
admissible for the purpose of raising a presumption that the
accident complained of happened in a particular manner, or
that the accident occurred without the fault of the plaintiff, but
by the neglect and want of care of the defendant. The facts of

the particular transaction are the only legitimate evidence of the injury and the manner and cause of its occurrence, and not other and different occurrences.

In an action to recover for an injury caused by an elevator, of alleged imperfect construction, the plaintiff will not be allowed to introduce evidence of a similar injury received a short time before by another person, in an elevator of a similar construction, in another part of the same building, owned and operated by the defendants.

In an action to recover damages for an injury received while riding in an elevator a verdict for the plaintiff was set aside, and upon a second trial the Court below refused permission to the defendants on cross-examination of Doctor B. the principal medical witness for the plaintiff on both trials, to ask whether he B. had not said, in urging the settlement of another accident case, that he, as the medical witness on the former trial "had been instrumental in getting a big verdict for the plaintiff." In the course of the examination of the same witness he stated that he had an interview with the father of the defendants, in regard to settling the case out of Court and that the father had acknowledged that the accident was the fault of the sons, and that he the father said that he had always been afraid of an accident there, and that he was willing that the matter should be settled; but requested the witness to see the sons and talk with them about it, which the witness declined to do. The defendants then called a witness by whom they proposed to prove that after the first verdict in this case, and before the case of W. referred to by doctor B., was tried, Doctor B. had come to see witness at his factory, and had urged him to settle W's case without going to Court, using as an argument for such course the fact that he (B.) had been the medical expert witness for the plaintiff in this case on the first trial, "and had been instrumental in getting a big verdict for him." The defendants also offered to prove, by the father of the defendants, that in the conversation with Doctor B., referred to by that witness, he did not say that his sons expected an accident on their elevator, and that it was their fault that the plaintiff was hurt; or that he would, if he had his way about it, settle the case—these offers were objected to by the plaintiff. and the objection was sustained. On appeal it was HELD:

1st. That in these rulings there was error.

2nd. That if it were true that the witness had stated and urged as a reason for settling another case out of Court, in which he was a medical witness, that he had been as such medical witness, the instrument of getting a big verdict for the plaintiff on a former trial of this case, it was material to the proper appreciation and weight to be given to the evidence of that witness on a subsequent trial of the same case, that the jury should understand how or in what manner he had thus been the instrument of procuring such a verdict,—whether by proper or improper means.

3rd. That this was clearly within the scope of a proper cross-examination. And upon the witness denying the use of the language imputed to him, it would be proper to prove what he did say, not with the view of having a direct effect on the issue, but to show what was the state of the mind of the witness, his relation to the plaintiff, and his motive and temper in the particular transaction, so as to enable the jury to determine the weight due to his testimony; and this was in no proper sense collateral to the inquiry

4th. That the evidence proposed to be given by the father of the defendants, was admissible to contradict the testimony of Doctor B. relating to the conversation had with the father, in which the latter was represented as having admitted that the accident to the plaintiff had occurred by the fault of the defendants, and that he had expected an accident to occur where it did; for, though it appeared that this testimony of Doctor B. in relation to the conversation with the father was volunteered, and not in response to any direct question relating to such conversation, yet the defendants had the right either to move, to have it stricken out or to repel it, by showing that such conversation never took place.     •

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The *first Four Exceptions* are sufficiently stated in the opinion of the Court.

*Fifth Exception.*—At the trial the plaintiff offered fourteen prayers. The fourteenth prayer was rejected and is omitted. The other prayers are as follows:

1. If the jury find from the evidence that the defendants possessed and occupied a building in the City of Baltimore, in which as co-partners they carried on business as manufacturers of shirts, overalls, etc., and that in said building there was an elevator propelled by steam, and that on the 4th day of September, 1890, the plaintiff was riding upon said elevator as a passenger on the business of the said defendants, and in the line of his employment as their servant, and that said elevator was not in a safe and proper condition for use and was a place of danger, and that its condition in this respect was known to the defendants at that time, or could, by the exercise of ordinary care and prudence, have been known by them, and that in consequence of said dangerous condition of said elevator, the said plaintiff whilst so riding upon said elevator in said factory was injured by the catching of his left foot and ankle between the floor of said elevator and certain scantling or boards negligently suffered and permitted by the said defendants to project into the elevator shaft up and down which said elevator was propelled, and shall further find that said plaintiff was ignorant of said elevator being dangerous for use or could not, by the exercise of ordinary care and prudence on his part, have known the same, and that whilst so riding upon said elevator he was exercising ordinary care and caution, then the plaintiff is entitled to recover damages against the defendants.          •

2. That if the jury find from the evidence, that the defendants employed the plaintiff to work in a factory possessed and operated by them as stated in the declaration and detailed in evidence, and that said defendants erected, maintained, suffered or permitted on said factory, an unfit, improper or dangerous elevator used to their knowledge by their employés for passenger service therein, that by reason of such use by the plaintiff of said elevator as a passenger in the business of the

defendants and in the line of his employment, and while exercising due care and caution the said plaintiff was injured as detailed in evidence, and that said injury was occasioned by the want of ordinary care and prudence on the part of the defendants, then the plaintiff is entitled to a verdict.

3. If the jury find from the evidence that the plaintiff was injured, as detailed in the evidence, while employed at the defendants' factory, and that said injury was caused by the defective and dangerous condition of the machinery and appliances there used without any fault or negligence on the part of the plaintiff thereto contributing, and that said defective and dangerous condition of the machinery and appliances was or might have been known to the defendants by the use of due diligence, then their verdict must be for the plaintiff.

4. If the jury find from the evidence that the machinery and appliances furnished by the defendants, and which the plaintiff in their service as alleged in the declaration, was required to use, was owing to some defect in it or in the building or structure in which it was placed, unsafe and dangerous by the negligence of the defendants, then in order to establish that the plaintiff assumed the risks involved in using said machinery and appliances it is not sufficient to show that the machinery and appliances were defective and that such defect was known to the plaintiff, but it must also appear that the danger was known to him as well as the defect which caused the danger or that by reasonable care on his part it would have been known to him.

5. That though an employer is not an insurer of the lives and limbs of his employés, yet he does impliedly engage that he will not expose them to unnecessary and unreasonable risk to life or serious bodily harm, and if the jury believe from the evidence that the defendants owned and possessed the factory, and employed the plain-

tiff to work for them therein as stated in the declaration, and that they erected and constructed and maintained an unfit, improper and dangerous elevator therein, and with knowledge permitted the same to be used in their business for passenger service by their employés; and if they further find the plaintiff, while riding upon said elevator as a passenger in the business of the defendants, was injured as detailed in the evidence; and that at the time of said injury said plaintiff was exercising due and proper care and caution, and was ignorant of the dangerous and unfit condition of said elevator, and that said injury was by the want of ordinary care and prudence on the part of the defendants, then the plaintiff is entitled to recover a verdict.

6. If the jury find from the evidence that the plaintiff was in the service of the defendants as alleged in the declaration, then it was the defendants' duty to use reasonable care that the machinery and appliances which the plaintiff in his capacity as servant was required to work and use; and the building and structure wherein said machinery and appliances were placed should be reasonably safe; and if the jury find that the said building or structure, or machinery, or appliances were or was through the want of reasonable care on the defendants' part unsafe in its original construction, or subsequently became unsafe for want of repairs and attention, or by reason of the neglect or default of the defendants in the premises; and that said plaintiff was injured in consequence thereof, then the plaintiff is entitled to recover unless the jury further find that the plaintiff knew that said building or structure, or machinery, or appliances were or was unsafe and dangerous, or ought by the exercise of reasonable care on his part to have known it, or unless by his own negligence he directly contributed to the accident.

7. If the jury find from the evidence that the plaintiff was in the service of the defendants, as alleged in

the declaration, at their factory in Baltimore City; and that the defendants committed to Louis A. Hazard, the supervision, management and control of said factory; empowered him to procure materials, machinery and instrumentalities necessary for the running of said factory and keeping the same in order and repair; to employ and discharge the servants and employés therein all according to his own judgment and discretion in the premises; and if they further find that said machinery and appliances and instrumentalities in said factory were or was out of order and in an unfit and dangerous condition; and that the said Hazard had notice thereof, or by reasonable care might have known it, and had the same repaired and made safe and in a fit condition, then the said Hazard was negligent, and his negligence in this respect is the negligence of the defendants.

8. If the jury find the injury to the plaintiff as stated in his first prayer, and that said injury was caused by the unsafe and unfit condition of said elevator or shaft spoken of by the witnesses, and that such unsafe and unfit condition of said elevator was known to the defendants, or might have been known to them, by the exercise of ordinary care and caution, for a sufficient length of time before the accident, to have enabled the defendants by the use of ordinary diligence to have placed said elevator or shaft in a fit and safe condition, and thereby have avoided the injury complained of, then the plaintiff, is entitled to recover, provided, they find that at the time of the injury the plaintiff was using ordinary care on his part, and was not aware of the unsafe and dangerous condition of said elevator and shaft.

9. If the jury find from the evidence the facts stated in the declaration, and that he, plaintiff, was injured as stated in plaintiff's first prayer through the negligence of the defendants, then in order to defeat recovery on the ground of contributory negligence on the plaintiff's

part, the burden rests on the defendants to satisfy the jury,

1st. That the plaintiff was guilty of negligence.

2nd. That such negligence of the plaintiff directly contributed to the accident.

10. That ordinary care and caution is such a degree of care and caution as men of ordinary prudence under similar circumstances usually employ; and that in determining whether or not the plaintiff, Christian A. B. Ackerman, used ordinary care and caution, they shall consider his age, and all the facts and circumstances of the case as given in evidence, and with such facts the jury may consider the ordinary conduct and motives of men for avoiding all undue exposure to risk and danger, in determining the question whether or not the plaintiff, Christian A. B. Ackerman, exercised reasonable care and caution to prevent the accident.

11. That the defendants owed it as a duty to their servants in their factory using and riding upon the elevator in the line of their employment, and in the business of the defendants, to use all reasonable means and efforts to furnish a fit and properly constructed elevator adapted to the purposes of its use and of the kind which is found to be safest when applied to use, and while they were not required to seek and apply every new invention, they must adopt such as are found by experience to combine the greatest safety with practical use.

12. That if the jury find for the plaintiff, then in estimating the damages they are to consider his health and condition before the injury complained of as compared with his present condition in consequence of said injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable him from engaging in those employments for which in the absence of such injury he would have been qualified, and also the physical and mental suffering, if any, to which he

was subjected by reason of said injury, and to allow him such damages, as in the opinion of the jury, will be a fair and just compensation for the injury which he has sustained.

13. If the jury find the plaintiff was in the service of the defendants, as alleged in the declaration, and was injured as therein stated, then the fact, if the jury so find that said injury was the direct result of the joint negligence of the defendants and Robert Howard, a fellow servant of the plaintiff, and not of the defendants alone, is no defence to this action.

The defendants offered the seven following prayers:

1. That the plaintiff has offered no evidence under the pleadings in the case legally sufficient to entitle him to recover; and the verdict of the jury must therefore be for the defendants.

2. If the jury shall believe from the evidence that the plaintiff was employed by the defendants as a helper in the machine department of their shirt factory, on Fayette street, as mentioned in the evidence; and that the happening of the accident whereby the plaintiff was injured, was caused by defects in the construction of the platform, or elevator upon which he was riding at that time, or by defects in the construction of the shaft in which said elevator operated, and that such defects were apparent and obvious to the plaintiff, or were such that a reasonably prudent person might have known, or by the exercise of reasonable care might have discovered, and that the plaintiff continued in the service of the defendants; and of the use of said elevator after the knowledge or discovery of said defects as aforesaid, he cannot recover against the defendants for the injuries he has sustained therefrom.

3. If the jury find that the plaintiff was employed by the defendants in their shirt factory on Fayette street; and that the defendants operated upon said premises two

elevators which the plaintiff was forbidden to use except in the discharge of some duty of his employment; and shall further find that at the time of the accident as mentioned in the evidence the plaintiff was riding upon one of said elevators for pastime or pleasure, and without the permission of the defendants as aforesaid, then the plaintiff cannot recover.

4. If the jury find from the evidence that the plaintiff, Christian A. B. Ackerman, at the time of the accident mentioned in this case, was employed by the defendants as a helper in the machine department of their factory on Fayette street; and that the defendants employed at the same time an operator for the elevator used on said premises, and upon which said accident happened; and that it was the duty of said operator to give his entire time and attention to the proper running and management of said elevator; and that the happening of said accident was due to the negligence or want of caution on the part of said operator in permitting the plaintiff, while riding thereon, to project his foot or heel beyond the edge of the platform thereof, or to troll his heel or foot along the shaft in which said elevator was then ascending after the attention of said operator was called to said conduct on the part of the plaintiff; if the jury so find, then the plaintiff cannot recover unless he shall satisfy the jury that in selecting said operator the defendants did not use reasonable care in procuring a faithful and competent person to work said elevator; and further that in this case the plaintiff has offered no evidence from which the jury may find that the defendants did not use such care in the selection of said operator.

5. If the jury find from the evidence any failure of the plaintiff, at the time of the accident, to exercise ordinary care, on his part, as by projecting his foot beyond the edge of the platform of the elevator upon which he was riding when injured, or by trolling his heel along the

side of the elevator shaft while the elevator was ascending said shaft, and that such conduct on his part directly produced or directly contributed to said accident in such wise that without such failure or negligence on his part the accident would not have occurred, then the defendants are entitled to a verdict.

6. If the jury believe from the evidence that the plaintiff, Christian A. B. Ackerman, could have ridden safely and securely upon said platform or elevator by the exercise of ordinary care and prudence on his part, and that he was cautioned by the operator of the elevator not to project his heel or foot beyond the edge of the platform of the elevator while ascending the hoist or shaft, and the accident to the plaintiff happened by reason of his wilful disregard of said caution, then he cannot recover in this case.

7. If the jury believe from the evidence that the platform or elevator upon which the plaintiff, Christian A. B. Ackerman, was riding at the time of the accident mentioned in the evidence, was in good order and competent for its purpose, and that the plaintiff's carelessness in not using it or riding thereon in a proper manner was the cause of the injury complained of, then he is not entitled to recover.

The Court (HARLAN, J.) granted the first thirteen prayers of the plaintiff, and rejected his fourteenth prayer; and granted all the prayers of the defendants except their first prayer, which was rejected. The defendants excepted, and the verdict and judgment being against them they appealed.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, ROBERTS, and MCSHERRY, J.

*Benjamin Kurtz*, for the appellants.

*William Colton*, for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The appellee brought this action against the appellants to recover for an injury suffered while in the employ of the latter, resulting from what is alleged to have been a defective and dangerously constructed elevator operated in the appellants' factory. It is alleged by the appellee that he was in the employ of the appellants in their factory to render certain services, "and that in the course of his said employment it was necessary for him to ride in and upon a certain elevator constructed and erected by said defendants in their factory, and propelled by steam, as a passenger from floor to floor, and especially from the third to the fifth floor thereof, from day to day during the period of his said employment; that, by the negligence and default of said defendants, the said elevator and the shaft up and down which said elevator was propelled by steam, were, and each was, constructed and erected unsafely, and in a defective and improper manner, the said elevator being without proper and suitable guard rails and walls, and said shaft being made dangerous and unsafe because of certain scantlings or boards projecting therein in close proximity to said elevator, when on its passage up and down the shaft, from about the fourth floor of said factory, and were suffered and permitted to be and remain out of repair, and in an unsafe and dangerous condition for want of repair, &c., which the defendants well knew, *but of which the plaintiff was ignorant;* that, by reason of the premises, the plaintiff while so employed, and whilst riding in and upon said elevator, as a passenger in the course of his employment, from the third to the fifth floor of said factory, and exercising due care and caution, on the 4th day of September, 1890, was injured by the catching of his left foot and ankle between the floor of said elevator and the said projecting scantling or boards in the said elevator shaft, whereby the plaintiff was seriously and

permanently injured, crippled in his said left foot and ankle," &c. The complaint is set forth in two other counts, but in more condensed form. The plea was not guilty.

There were several exceptions taken by the appellants in the course of the trial, four of which were to rulings upon questions of evidence. And on the whole evidence admitted, the plaintiff offered fourteen prayers, and the defendants seven. All of the plaintiff's prayers, except the fourteenth, were granted, and all those of the defendants were granted, except the first, and that asked the Court to say that there was no evidence legally sufficient to be considered by the jury, and therefore the verdict should be for the defendants.

We shall dispose of the prayers first.

It appears from the evidence that the appellee was fourteen years and seven months old at the time of the accident. That his employment required him to go from one floor to another in the factory very often—as often as twenty times a day. That among his duties were those of getting trucks for the transfer of goods, and taking them from one floor to another by the elevator, and unloading goods from the waiters or platforms of the elevators. On the occasion of the accident he had been sent for a truck to a lower floor, and after getting the truck and placing it on the platform of the elevator, he got on himself and was ascending the shaft, (the elevator being in charge of and operated by an independent regular operator,) when at the third floor, and while standing near the edge of the platform, with his back to the outer edge, his left foot, in someway extending over the side of the platform, was caught between the side of the platform and the end of a joist projecting into the shaft, and was badly crushed. The space between the edge of the platform and the end of the projecting joist or timber in the shaft was about two inches.

The plaintiff swears that the shaft was dark, and that he did not see the projecting joist, or know of the danger to his position on the elevator.

The defence is that the injury was produced by the plaintiff's own carelessness, or by his negligent inattention to the obvious dangers of his situation on the elevator; and considerable evidence is given in support of that defence.  It is also insisted that the plaintiff was wrongfully, and against warning, riding on the elevator, and therefore at his own risk, there being stairways for going from one floor to another.

We have carefully considered the evidence, and are of opinion that the Court below was well warranted in declining the defendants' prayer to withdraw the case from the jury.  But, inasmuch as we find it necessary to reverse the judgment and remand the case for a new trial, on some of the exceptions taken, we refrain from a critical analysis of the evidence in support of the claim of the plaintiff, but leave that to the jury, whose province it will be to draw their own conclusions therefrom. But in saying that the case was properly submitted to the jury on the facts, we are not to be understood as intimating an opinion as to the weight of evidence, or that upon the whole evidence the weight thereof preponderates the one way or the other.  We simply say that there was sufficient evidence to be considered by the jury, and that upon the whole evidence it was for the jury to say, under the instructions of the Court, what was the just result of the facts before them.

There is no doubt, that where an elevator is erected in a factory or warehouse, and is intended to be used only for the purpose of carrying and transferring goods and materials from one part of the building to another, and the employés in the establishment, familiar with the construction and operation of the elevator, and the purpose of its construction, ride thereon under a mere im-

plied license, for their own pleasure or convenience, they must be taken to accept whatever risk that may be incident to such construction and operation; and, in such case, they can only require of the defendant the use of ordinary care either in the construction or operation of the machine. *O'Brien vs. Western Steel Co.*, 100 *Mo.*, 182; *Patterson vs. Hemenway*, 148 *Mass.*, 94. But an elevator is in many respects a dangerous machine, and though it may be primarily intended only as a freight elevator, yet, if the employés, in the course of their employment, are authorized or directed to use the elevator as means of personal transportation, the employer, controlling the operation of the elevator, is required to exercise great care and caution both in the construction and operation of the machine; so as to render it as free from danger as careful foresight and precaution may reasonably dictate. Nothing short of this will excuse the defendant, unless it appear that the plaintiff himself, or the party under whom the plaintiff is allowed to claim, was guilty of direct contributory negligence to the production of the disaster. *Peoples' Bank of Balto. vs. Morgolofski*, 75 *Md.*, 432; *Treadwell vs. Whittier*, 80 *Cal.*, 575. This last case referred to contains quite an exhaustive examination of the whole subject; and while most of the propositions there maintained are unquestionable, there are some to which we are not called upon, by the requirements of this case, to accede.

In this case, neither party would seem to have any ground whatever to complain that he did not get the full benefit of the law applicable to the case, in the instructions granted. It is to be regretted, however, that so many instructions, by separate prayers by both parties, concluding to the right to recover or against the right, were given. They were rather calculated to perplex than simplify and clearly instruct the jury as to the law of the case. In such case of multiplicity of

prayers there is always danger that the jury, in their perplexity, may disregard the instructions altogether. We do not perceive, however, that there is any such error in any of the prayers granted at the instance of the plaintiff as would call for a reversal of the judgment, if the case stood upon the instructions alone.

But in the rulings upon the questions of evidence, as presented in the bills of exception, we do find error that requires reversal.

In the first bill of exception, it appears that the plaintiff was allowed, against the objection of the defendants, to give in evidence, by one of the employés in the factory, that upon a prior occasion, and before the plaintiff entered the service of the defendants, an accident had happened to the witness of a character somewhat similar to that which happened to the plaintiff, but on another elevator in the establishment, of like structure to that upon which the plaintiff was hurt, and of which prior accident the general superintendent had notice. The witness, according to her testimony, was, with other girls, employés, riding on the elevator, going up to the fifth floor of the building to her work, and while standing on one side of the platform, and being crowded to the edge thereof, her foot was caught in the shaft, and her ankle was injured, which caused her to remain at home for two months: That when hurt she was standing with her back close to the rail on that side of the elevator, and the crowd pushed her foot or heel through the rail and beyond the edge of the elevator platform on which she was riding, and it was caught in the shaft: That the distance or space between the edge of the platform and the side of the shaft was some two or three inches.     All the circumstances of that accident were allowed to go to the jury.

This evidence, we think, was clearly inadmissible.     It was wholly collateral to the real issue on trial in this

case. It could not legally form the basis of any well founded presumption as to the existence of negligence on the part of the defendants, as the direct cause of the injury to the plaintiff. It most likely had the effect to distract the attention and mislead the minds of the jury from the real issue in the case, and to produce a prejudice against the defendants. It would seem to be well settled upon the soundest principles, that evidence of other similar occurrences, on other occasions, is not admissible for the purpose of raising a presumption that the accident complained of happened in a particular manner, or that the accident occurred without the fault of the plaintiff, but by the neglect and want of care of the defendants. The facts of the particular transaction are the only legitimate evidence of the injury and the manner and cause of its occurrence, and not other and different occurrences. *Cleveland, etc. Railway Co. vs. Wynant*, 114 *Ind.*, 525, and the cases there cited; *Maguire vs. Middlesex Railroad Co.*, 115 *Mass.*, 239; *Hudson vs. Chicago & N. W. R. Co.*, 59 *Iowa*, 581. This is not analogous to the case of an attempt to affect a defendant with knowledge of a negligent habit of an employé, as in the case of *Baltimore Elevator Co. vs. Neal*, 65 *Md.*, 453, nor to that of a case of a latent defect in machinery, or want of repair in a road or bridge, and the simple fact of a former accident is allowed to be proved as means of affecting the defendant with or bringing home to him, knowledge of such supposed negligent habit, or defect or want of repair. But here, the former accident, occurring to the witness, did not happen on the same elevator upon which the plaintiff received his injury, nor did that accident happen under the same condition. The fact, therefore, was wholly collateral. It does not appear that the witness ever sued the defendants for her injury; but if she had sued and recovered judgment, that judgment would not be admissible in this case to prove or afford

the foundation for a presumption, that the elevator upon which the plaintiff was hurt, was dangerous, or that the accident was occasioned by the fault of the defendants, or to negative the existence of contributory negligence of the plaintiff.    And if the judgment could not be admitted for any such purposes, though the defendants may have had their right, and exercised it, of defending against such judgment, it is difficult to perceive upon what principle the circumstances of the original transaction of the former accident could be received in evidence.    The occurrences were independent, and there is no necessary evidentiary connection between them. The rule in regard to the relevancy of evidence is fundamental, and is well defined.    It excludes, says Professor Greenleaf, "all evidence of *collateral facts*, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute; and the reason is, that such evidence tends to draw away the minds of the jurors from the point in issue, and to excite prejudice and mislead them; and moreover the adverse party, having had no notice of such course of evidence, is not prepared to rebut it."    1 *Greenl. Ev.*, *sec.* 52.    It is clear, therefore, that there was error in the first exception.

The second, third, and fourth exceptions may be considered together.    It appears that this case has been twice tried, the verdict on the first trial having been set aside by the Court; and in both trials Dr. Brewer was examined as a principal medical witness for the plaintiff.    He proved that he had attended the plaintiff and treated his injury, and that his bill for such services was unpaid.    It was proposed to be asked of Dr. Brewer, on cross-examination at the last trial, whether he had not said, in urging the settlement of another accident case, in which he was also a witness for the plaintiff in that case, that he, Brewer, as the medical witness on

Wise *vs.* Ackerman.

the first trial of this case, "had been instrumental in getting a big verdict for the plaintiff." This was objected to by the plaintiff, and the objection was sustained by the Court. In the course of the examination of the same witness, he stated that he had an interview with Henry Wise, Sen., the father of the defendants, in regard to settling this case out of Court, and that the father had acknowledged that the accident was the fault of the sons, and that he, the father, said that he had always been afraid of an accident there, and that he was willing that the matter should be settled; but requested the witness to see the sons, and talk with them about it, which the witness declined to do.

The defendants then called a witness by whom they proposed to prove that after the first verdict in this case, and before the *Wiener Case* (the other case referred to by Dr. Brewer,) was tried, Dr. Brewer had come to see witness at his factory, and had urged him to settle *Wiener's Case*, without going to Court, using as an argument for such course the fact that he, Brewer, had been the medical expert witness for the plaintiff in this case on the first trial, "and had been instrumental in getting a big verdict for him." The defendants also proposed and offered to prove by Henry Wise, Sen., the father of the defendants, that in the conversation with Dr. Brewer, referred to by that witness, he did not say that his sons expected an accident on their elevator, and that it was their fault that the plaintiff was hurt; or that he would, if he had his way about it, settle the case. These offers were objected to by the plaintiff, and the objection was sustained.

In these rulings we think there was error. If it was true that the witness had stated, and urged as a reason for settling another case out of Court, in which he was a medical witness, that he had been, as such medical witness, the instrument of getting a big verdict for the

plaintiff on a former trial of this case, it was certainly material to the proper appreciation, and weight to be given to the evidence of that witness on a subsequent trial of the same case, that the jury should understand how or in what manner he had thus been the instrument of procuring such verdict;—whether by proper or improper means. That was clearly within the scope of a proper cross-examination. By means of such cross-examination, as said by *Greenleaf*, "the situation of the witness with respect to the parties, and to the subject of litigation, his interest, his motives, his inclination, and prejudices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he has used those means, his powers of discrimination, memory and description, are all fully investigated and ascertained, and submitted to the consideration of the jury, before whom he has testified, and who have thus had an opportunity of observing his demeanor, and of determining the just weight and value of his testimony." 1 *Greenl. Ev., sec.* 446. This general doctrine and scope of cross-examination is fully sanctioned by this Court, in the case of *Blessing vs. Hape*, 8 *Md.*, 31. And upon the witness denying the use of the language imputed to him, it would be competent to prove what he did say, not with the view of having a direct effect on the issue, but to show what was the state of the mind of the witness, his relation to the plaintiff, and his motive and temper in the particular transaction; so as to enable the jury to determine the weight due to his testimony; and this is in no proper sense collateral to the inquiry. *Atty. Genl. vs. Hitchcock*, 1 *Exch.*, 100; 1 *Stark. Ev.*, (*9th Ed.*) 189.

It is equally clear, we think, that the evidence proposed to be given by Henry Wise, Sen., the father of the defendants, as set out in the fourth bill of exception, was admissible. It was to contradict the testimony of

Dr. Brewer, relating to a conversation had with Henry Wise, Sen., in which the latter is represented as having admitted that the accident to the plaintiff had occurred by the fault of the defendants, and that he had expected an accident to occur where it did. For though it appears that this testimony of Dr. Brewer in relation to the conversation with Henry Wise, Sen., was volunteered and not in response to any direct question relating to such conversation, yet the defendants had the right either to move to have it stricken out or to repel it, by showing that such conversation never took place. *Blewett vs. Tregonning,* 3 *Ad. & Ell.,* 554; 1 *Greenl. Ev.,* sec. 461; 2 *Tayl. Ev.,* sec. 1324.

It follows that for the errors in the first, second, third and fourth exceptions, the judgment must be reversed, and a new trial awarded.

*Judgment reversed, and*<br>*new trial awarded.*

(Decided 2nd December, 1892.)