GOGA v. AMERICAN CAR & FOUNDRY CO.

Master and Servant—Defective Appliances—Assumption of Risk.

  Where a servant of mature years and of full information respecting a machine on which he is working continues to operate it without repair or promise of repair after informing his master of a defect in it, he assumes the risk of injury because of that defect, though the master informs him the machine is safe.

Error to Wayne; Brooke, J. Submitted October 4, 1905. (Docket No. 5.) Decided December 22, 1905.

Case by Stephen Goga against the American Car & Foundry Company for personal injuries. There was

judgment for defendant notwithstanding a verdict for plaintiff, and plaintiff brings error. Affirmed.

Plaintiff was employed by the defendant as operator of a large machine known as "Shear No. 4," used for the purpose of cutting steel plates. The machine consisted of a steel table 12 feet long by 12 or 14 inches wide, standing about 3 feet above the floor. The shear had a large knife weighing 4,000 pounds, operated by hydraulic pressure. When the knife is raised, preparatory to putting the steel plate upon the table for cutting, its left end is about 2½ inches and its right end 14½ inches above the table. The knife is supported in the air by two eccentrics, to which it is attached at either end, and these eccentrics are attached to a hollow shaft. As the shaft makes one revolution, the knife descends past the edge of the table and back to its original position, and stops. The situation may be better understood by reference to the diagram.

The time occupied by one movement of the knife down and up is about seven seconds. The movement of the knife is controlled by a lever, which is not shown upon the diagram. At one end of the lever is an iron weight weighing from 25 to 30 pounds. The lever is made of steel, and passes through the weight. The other end of the lever is used by the operator in controlling the movement of the knife. When a plate is placed upon the table by the operator, and is ready for trimming or cutting, the operator, or one of his helpers, pulls down the handle of the lever, thus causing the shaft to revolve. As soon as the knife begins to descend, he releases the handle, which flies up in consequence of the weight at the other end, and causes the knife to stop at the top. If the handle be kept down, the knife continues to move up and down.

On the day of the accident plaintiff was engaged in trimming what are known as "side stakes," being pieces of steel weighing from 40 to 50 pounds, and about 4 feet 1 1/16 inches long by 11¼ inches wide at one end and 6½ inches wide at the other, with a spine or hump in the

center, slanting up to the height of 2 5/16 inches.   The distance between the base of the spine and the edge at the end of the stake at the extreme point is about $3\frac{1}{8}$ inches. The distance between the base of the spine and the side where it is to be cut is $2\frac{3}{4}$ inches.   He had three helpers; one bringing the material, one handing it to him, and the third taking it away.   Sometimes he pulled the lever himself, and sometimes his helpers pulled it.

In making these stakes the flat sheet is cut wider at the end where the spine is highest.   In this way the edges are irregular, and it is necessary to trim them, so as to make the edges straight and parallel.   Both edges are required to be trimmed, so that after trimming one edge the stake must be turned, so as to bring the opposite edge under the knife.   Plaintiff testified that he had trimmed one side of a stake, and was in the act of turning it around to trim the other edge; that his left hand was under the knife; and that the knife descended and cut off a portion of the fingers of his left hand—on the first three fingers just back of the first joint, and on the little finger just in front of the first joint.

The main ground of negligence is a failure to keep the lever in proper repair.   It is claimed by the plaintiff that the metal ball, used as a weight to pull the lever down, was attached to the lever by a set screw; that said set screw had become worn and unfit for use; that on the day of the accident the knife descended after the plaintiff had pulled the lever down and then released it; that he called the attention of one Weir, an inspector, to it; that on account of the looseness of the set screw the ball had moved so near the fulcrum that it would not pull the lever down; that he and Mr. Weir examined it; that Mr. Weir moved the metal ball to its place at the end of the lever, tightened the set screw, and informed plaintiff that it was all right.   The fall of the knife is attributed by the plaintiff to the loosening of the wornout set screw, and the movement of the weight towards the fulcrum, in consequence of which the knife descended and cut off his

fingers.  Mr. Weir, the inspector, absolutely denied the plaintiff's statement in regard to the lever, and testified that after the accident he immediately went to inspect the machine, found it in perfect order, pulled the lever several times, and that it operated properly; that no repairs were made; and that it was continued in use without any repairs, and was in use at the time of the trial.   It was further shown by Mr. Weir, and by others who actually did the work, that when this machine was set up and ready for use, about a year and a half before the accident, the weight was found to be insufficient, even when moved to the end of the lever.   Therefore hot Babbitt, in weight about five pounds, was run into the weight, in the slot where the lever arm went through.   It was also shown that the lever, weight, and Babbitt were in the same condition at the time of the accident; that the weight could not be moved, and never had been moved.   During the trial an experiment was made with a hammer weighing 12 or 15 pounds, and several strokes moved the weight only one-eighth of an inch.

Defendant's uncontradicted evidence also showed that the identical stake upon which plaintiff was working at the time of the accident was produced in court, and that neither edge had been trimmed.   Plaintiff admitted the identity of the stake.

When the plaintiff had rested, the defendant moved for the direction of a verdict in its favor.   The court thought it best for the defendant to put in its testimony if it chose, and asked the attorneys for the plaintiff to stipulate that if a verdict should result for the plaintiff, and the court afterwards became convinced that he should have directed a verdict, he might do so with the same force and effect as he might then do it.   To this plaintiff's attorneys consented.   Defendant renewed its motion at the close of the testimony.   It was again then decided by the court that the case might go to the jury under the stipulation. This was done, and the jury rendered a verdict for the plaintiff.   The court, under the stipulation, afterwards

became convinced that plaintiff was not entitled to a verdict, and entered a judgment for the defendant non obstante veredicto. The reason given by the learned circuit judge is stated by him as follows:

"A careful consideration of all the testimony of the case bearing upon the question has led me to conclude that the plaintiff is not entitled to recover in this case. It appears beyond dispute, according to the plaintiff's own testimony, that the weight upon the arm of the lever had moved on the afternoon of the day before he received the injury; that an investigation by the superintendent, at his request, demonstrated that the screw which held the weight in place had become badly worn; that he (the plaintiff) saw the said screw and its worn condition, and saw it replaced on the arm of the lever, and, upon being assured by the superintendent that the machine was fit to use, continued its operation. I believe this case to be governed by the case of *Fischer* v. *Goldie*, 132 Mich. 574, and that, by continuing the operation of the machine after such notice he had of its defective condition, he assumed the risk incident to the operation.

"Even if it is not true, it seems to me absolutely beyond controversy that the plaintiff was guilty of contributory negligence in permitting his hand to get under the knife. The operation of the knife is extremely deliberate, it taking about seven seconds to make a complete revolution, $3\frac{1}{2}$ seconds to come down and $3\frac{1}{2}$ seconds to return; the distance through which the knife passes being about 12 to 15 inches. It is obvious to anybody that this motion is very slow, and that, if the plaintiff's eyes had been upon the work, the knife being immediately in front of him, and above his hands, in the exercise of the slightest prudence he would not have been injured. Aside from that it is quite apparent, from the demonstration made by the plaintiff in open court, that in placing the iron stake, upon which he was at work at the time, under the knife for the shearing operation, it was not, as a matter of fact, necessary for him to put his hands under the knife at all. The iron piece upon which he was working had upon it a large spine, some two inches in breadth and three feet or more long, and with his hands upon the spine the nearest point of contact between the spine and the operating knife was more than two inches distant. If the plaintiff chose carelessly to fail to watch the operation of the knife, which

was immediately in front of him, and in full view, moving very slowly, or, if he chose carelessly to insert his hand under the knife, when such action was plainly unnecessary, it seems to me clear that he is chargeable with such contributory negligence as will prevent his recovery."

*Dohany & Dohany*, for appellant.

*Angell, Boynton, McMillan & Bodman*, for appellee.

GRANT, J. (*after stating the facts*). The ruling of the learned circuit judge as to the assumption of the risk was correct. Plaintiff was 27 years old, had been at work in defendant's shop for four years, and had operated this machine for one year. He perfectly understood its operation and the cause of the knife's repeating. There was nothing intricate about the construction of the lever, the object of the weight, its moving, and the reason therefor. He explained the operation clearly and intelligently. He knew that, if the weight was loose, it would, when raised, move towards the fulcrum. He knew and understood the defect, if any there was, as well as Mr. Weir. He testified that the screw was worn out. He needed no one to tell him that the bolt or screw would not hold the weight if the screw was worn out. No repair was made. If a repair had been made by furnishing a new bolt or screw, he would probably have been justified in relying upon the assurance of Mr. Weir that it was then all right. Merely replacing the old and worn-out screw left the lever in precisely the same condition it was before, and this he knew as well as any one. Knowing the defect, and knowing that it was not remedied, he assumed the risk, under *Fischer* v. *Goldie*, 132 Mich. 574, and authorities there cited. See, also, *Ragon* v. *Railway Co.*, 97 Mich. 265, wherein it was held :

" An employé may contract to use defective machinery, and, where he knows of the defect and uses the machinery voluntarily, the law warrants the inference that he assumes the risks incident to such use."

Plaintiff in *Rohrabacher* v. *Woodard*, 124 Mich. 125,

sought to rely upon the same assurance upon which the plaintiff in this case seeks to rely, and we there held:

" An experienced servant of mature years cannot continue to operate a machine which he knows is dangerous without assuming the risk simply because the employer has assured him that it is safe, when the servant has just as much knowledge of the danger arising from its operation as the employer."

See, also, *Mackey* v. *Furnace Co.*, 119 Mich. 552. This disposal of the case renders it unnecessary to determine the other questions raised.

Judgment affirmed.

. MOORE, C. J., and CARPENTER, MONTGOMERY, and HOOKER, JJ., concurred.