WILSON *v.* ESCANABA WOODENWARE CO.

1. MASTER AND SERVANT—PERSONAL INJURIES—RISK ASSUMED—
   OBVIOUS DANGERS—HAZARDS OF EMPLOYMENT.
   A servant assumes the risk of injury due to obvious dangers
   and such of the hazards of the employment, as the business
   is conducted by the master, as are known to him.

2. SAME—DEFECTIVE ELEVATOR CABLE—USE.
   Where plaintiff knew that one of the two cables supporting de-
   fendant's elevator had broken and been removed, but did not
   know that the remaining cable was insufficient to support it,
   nor that the remaining cable was fractured, and was weak
   owing to a tendency of rust to attack the inner and concealed
   wires, the defects were not so obvious as to make plaintiff a
   user of the elevator at his peril, in face of the duty of defend-
   ant to provide reasonably safe machinery and use reasonable
   diligence in maintaining it, especially in view of assurances
   of safety by defendant's factory superintendent.

3. SAME—DEFECTIVE ELEVATOR—DUTY TO INSPECT—NEGLIGENCE.
   A freight elevator supported by wire cables is an instrumental-
   ity inherently dangerous and the maintenance of such an
   appliance imposes upon a master the duty of exercising ordi-
   nary and reasonable care and diligence to discover and cor-

rect any deficiency which shall result from use or the lapse of time, the degree of care required being that which a person of ordinary prudence would exercise under similar circumstances with due regard to the character of the appliance and the gravity of the consequences of accident.

4. SAME—SUFFICIENCY OF INSPECTION—QUESTION FOR JURY.

Whether the inspection of a freight elevator in defendant's factory was sufficient to relieve defendant from liability for injuries to a servant resulting from a fall in consequence of a broken cable, *held,* as is usual in such cases, a question for the jury.

5. SAME—PROXIMATE CAUSE—CONCURRENT CAUSES.

In an action for injuries resulting from the fall of an elevator, defendant was charged with negligence (1) in not providing suitable cables for the elevator, (2) in not providing and maintaining a proper safety device, and (3) in failing to properly inspect the apparatus. *Held,* that since an absence of negligence in any one of the three particulars would have prevented the accident, they were concurrent causes, negligence in any one or two or all of which would support a verdict.

Error to Delta; Stone, J. Submitted April 9, 1908. (Docket No. 8.) Decided May 1, 1908.

Case by Edward M. Wilson against the Escanaba Woodenware Company for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Yelland & Norblad,* for appellant.

*F. D. Mead* (*Cummiskey & Spencer* and *E. C. Eastman,* of counsel), for appellee.

HOOKER, J. The plaintiff has appealed from a verdict rendered in favor of the defendant in obedience to the direction of the trial judge. The action was brought to recover damages suffered by plaintiff through the fall of an elevator for carrying freight in defendant's factory, at a time when the plaintiff, its employé, was riding upon it in the line of his duty.

There is evidence tending to show that the elevator was provided with twin cables for raising it, and something in the nature of a safety device, which, at the time of the accident, was out of use, apparently through design. The cables had been in use some time, and witnesses differ in relation to their condition. Plaintiff was engaged in transporting to the lower floor the product of a tenoning machine in use upon the second floor. During plaintiff's temporary absence, and while another employé was using the elevator, one of the cables broke, and, on plaintiff's return, he was so informed, and he saw that it had been removed. Mr. Judson, the manager of the mill, came up and asked plaintiff why he was "holding these men, stopped them from using the elevator," and plaintiff told him that one of the cables was broken, and he did not know as it was safe to run it in that condition. Judson said he "didn't know either as it would be real safe," and directed plaintiff to hunt up Mr. Reiel, the superintendent of the mill, and, "whatever he should tell him to do, to go ahead and do that." Plaintiff found Reiel with Mr. Post, the assistant superintendent, and there is testimony that they had been examining the elevator. Plaintiff informed Reiel of what Judson had said, and Reiel told him that "it was all right, to use it," and that they often had been obliged to run the elevator on one cable. Plaintiff did as instructed by Reiel, and a few hours later the remaining cable broke and he was painfully injured. He was taken to a hospital and suffered two amputations on one leg and some kind of an operation upon the other. Some two weeks later, a transaction occurred between plaintiff and representatives of the defendant, which, the latter says, was a settlement of plaintiff's claim, but which he denies to have been such. He received a sum approximately $400 at the time or soon after, and the defendant produced at the trial a written release of plaintiff's claim, which he unquestionably signed at the time of the alleged settlement. Its production at the trial was accompanied by testimony from several wit-

nesses contradicting plaintiff's statement to the effect that
"he did not read or hear the release read," and that "he
was sick and feverish and did not know that he was re-
leasing his claim or making a settlement." Subsequently
his counsel tendered $500 to the defendant, and began this
action.

Plaintiff's brief states that five questions were raised
below, viz.:

"(1) That the plaintiff was guilty of laches in not mak-
ing the tender in time.

"(2) That there was a settlement of all damages sus-
tained by the plaintiff.

"(3) That the plaintiff assumed the risk in the opera-
tion of the elevator.

"(4) The question of proximate cause.

"(5) That the tender was not a legal one because it ex-
ceeded the amount actually expended by the defendant
company on the part of the plaintiff."

*Assumption of risk.* The learned circuit judge based
his instruction upon the conclusion that from the undis-
puted testimony the plaintiff must be held to have as-
sumed the risk of using the elevator. He was of the opin-
ion that there was nothing intricate in the elevator that
plaintiff could not as well understand and appreciate as his
employer, and that in such a case, by using it, he took the
risk of injury, there being no promise to repair. It is the
rule that a servant, knowing the hazards of the employ-
ment, as the business is conducted by the master, assumes
the risk of injury due to such hazard, and the same is true
where such dangers are obvious. Authorities supporting
this rule are cited in *Swick* v. *Cement Co.*, 147 Mich.
463 et seq., where the question is discussed. In that case
the absence of covers required by statute was the danger
to which the plaintiff was subjected, and it was held that
the penal statute requiring the covering of belts alone pre-
cluded the application of the doctrine of assumption of
risks. The absence of the cover was obvious, and that
there was danger from an uncovered belt was plain to
any man of ordinary sense. The same may be said of the

cases relied upon by the circuit judge.  *Fischer* v. *Goldie*, 132 Mich. 574, and *Goga* v. *Foundry Co.*, 142 Mich. 340. In the former the dangers arose from a lever which was in the habit of getting out of repair.   It was said:

"There was nothing concealed or hidden in the danger. The whole machinery was open to his observation, and we think the circuit judge committed no error in holding that the plaintiff assumed the risk."

In the latter case the defect was a worn set screw.   In both of these cases it appeared that the defendant knew the danger, and in the latter that he knew it none the less although the master expressed the opinion that the machine was safe.

The case now under consideration may properly be distinguished in this particular.   While it is not improbable that the jury would have found that the plaintiff knew this danger, they might have reached a different conclusion.   No one can deny that he knew that one cable had been removed, leaving but one to support the elevator, but we cannot say that one cable was not ordinarily sufficient for the support of the elevator, or that under ordinary circumstances it would be negligent to run an elevator without a safety device, or that a cable showing some wear was dangerous, nor can we say that he was obliged to determine the question of the safety of the apparatus, especially the cable, if expert knowledge not possessed by plaintiff was necessary.   It appears that there were some broken wires causing a fraying of the cable, but how serious they were is a question, and there is testimony indicating that there were other defects unknown to the plaintiff and not necessarily obvious, such as a fracture of the cable and a weakness owing to a tendency of rust to attack the inner and concealed wires. We think that the alleged defects and dangers were not so obvious as to necessarily make the plaintiff a user of the elevator at his peril, in face of the duty of the defendant to provide reasonably safe machinery, and to use reasonable diligence in maintaining it, especially in view

of the assurance of the safety of one cable given by a man to whom he had a right to look for more knowledge than he possessed. We are of the opinion that this was a proper question for the jury.

Inspection. The opinion was also expressed that the evidence showed a proper inspection, although this was not a reason given for the conclusion reached. Obviously if there was, it cannot be said that there was negligence for want of it.

It appeared that Reiel and Post looked at and made some inspection of the elevator, and it may be that a jury would have concluded that the inspection was all that the law required, but it was not so conclusively proven as to be a question for the court. If it is true that a wire cable is subject to a deterioration from atmospheric influences, which affect its hidden parts to an extent that makes it unsafe and dangerous, and that such condition is not obvious, but is discoverable only by a careful examination, such as the employé is not expected to make, and is possibly incompetent to make, it imposes the duty upon the master to provide against the certain danger of continued use. If the deterioration is certain the duty to guard against the natural and inevitable consequences of continued use is obvious, by inspection if inspection will apprise of the danger, by reasonable renewal if that cannot be expected.

This elevator, like all other similar ones, was an instrumentality inherently dangerous. Weak cables are certain to precede disaster, if not changed, and it is the master's duty to exercise ordinary and reasonable care and diligence to discover and correct any deficiency which shall result from use or the lapse of time. The degree of care in examining for defects is said to be such as a person of ordinary prudence would use under similar circumstances, and it must have a relation to the character of the machine and the gravity of the consequences of accident. Hence, ordinarily, these questions are for a jury. 1 La-

batt on Master and Servant, § 160 et seq.; 26 Cyc. pp. 1134, 1140 et seq.; *McDonald* v. *Railroad Co.*, 108 Mich. 7.

Proximate cause.   The defendant is charged with negligence in three particulars, viz., (1) in not providing suitable cables for the elevator; (2) in not providing and maintaining a proper safety device; (3) in failing to properly inspect the apparatus.

It is manifest that without the breaking of the cable there could have been no injury, and equally plain that an effective safety device would have prevented it, although the cable did break, and a proper inspection, if acted upon, should have prevented the use of the elevator in its crippled condition.   Had there been an absence of negligence in any one of these particulars, no accident would have happened or the injury would have been averted.   Hence they may be called concurrent causes, for each could be said to be an efficient cause, without which there would have been no injury.   Being so charged, negligence in any one or two or all of these particulars, if found, would support a verdict.

Settlement.   The testimony relating to the alleged settlement raised a question for the jury.

We are constrained to reverse the judgment and direct a new trial.

BLAIR, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.