LEFOE *v.* CORBY COMPANY.*

                         ─────────────

FREIGHT ELEVATORS; NEGLIGENCE; PROXIMATE CAUSE; QUESTIONS FOR
                                JURY.

1. While the operator of a freight elevator is required to use only reasonable care and diligence to keep it safe, the inherently dangerous

   ─────────────────────────────────────────────────────────

   **Elevators—Negligence.**—For cases upon the question of the master's liability for injury to employee caused by defective elevator and negligence

character of such an instrumentality will be considered in the determination of the question of what amounted, in a given case, to such reasonable care and diligence.

2. In an action for personal injuries by one injured in the operation of a freight elevator, the jury, in determining the question as to what constituted reasonable care on the part of the defendant in keeping the elevator in repair, should take into consideration the character of the instrumentality, its liability to get out of repair, and the consequences reasonably likely to ensue from any negligence in that regard.

3. In determining whether the defendant's negligence was the proximate cause of the plaintiff's injury, the question is whether, in the sequence of events between the defendant's default and the plaintiff's injury, an entirely independent and unrelated cause intervened, or whether the injury was the immediate, natural, and probable consequence of such default. (Citing *Washington, A. & Mt. V. R. Co.* v. *Lukens,* 32 App. D. C. 442; *Steven* v. *Saunders,* 34 App. D. C. 321, and *Munsey* v. *Webb,* 37 App. D. C. 185.)

4. In an action for personal injuries, where it appeared that the plaintiff, while in a car loading ice, which was delivered to the car by means of a chute running from a door of the defendant's building, to which it was raised from below by means of a freight elevator, was injured by a block of ice being precipitated down the chute into the car, without warning to the plaintiff, the release of the ice being caused by the jumping of the elevator, which was out of order, it was *held* that it was a question for the jury whether the plaintiff's injury was the natural and probable consequence of the defective condition of the elevator. (Following *Steven* v. *Saunders,* 34 App. D. C. 321, and *Munsey* v. *Webb,* 37 App. D. C. 185.)

No. 2300. Submitted November 10, 1911. Decided January 2, 1912.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, upon a verdict for the defendant directed by the Court, in an action to recover damages for personal injuries.          *Reversed.*

The COURT in the opinion stated the facts as follows:

This appeal involves a judgment in the supreme court of

---

of fellow servant, see note to *Siegel, C. & Co.* v. *Trcka,* 2 L.R.A.(N.S.) 647; Duty to employees as to inspection of elevator, *Young* v. *Mason Stable Co.* 21 L.R.A.(N.S.) 592.

the District upon a directed verdict for the defendant, the Corby Company, appellee here, in an action by the plaintiff, Thomas B. LeFoe, appellant here, to recover damages for personal injuries alleged to have been sustained in consequence of a defective freight elevator at defendant's ice plant in the District of Columbia.

In his declaration, plaintiff alleges that the defendant, at the time of the plaintiff's injury, was engaged in the manufacture of ice at its plant in this District; that plaintiff was employed by the American Ice Company, an ice dealer; that on or about July 11, 1908, plaintiff, assisted by another employee of said last-named company, was engaged in transferring from defendant's plant blocks of ice to a railway freight car standing upon a railway siding adjacent to said plant; that in accomplishing this transfer it was customary to raise the ice upon an elevator to a door or window in the side of the building, whence the ice was sent down an inclined chute, block by block as called for, the other end of the chute resting inside said car; that the use of this elevator for the purpose mentioned was upon the invitation and direction of the defendant; that plaintiff had frequently so used the elevator; that upon the occasion in question blocks of ice were loaded upon the elevator, the elevator raised to said door, and, while said assistant or coemployee was standing on said elevator, awaiting the order from plaintiff to send down another block of ice, the elevator, without the fault of said coemployee, suddenly and without warning "ascended or moved upwards by reason of the fact that said elevator, and the machinery and appliances thereto attached, were in an unsafe and dangerous condition, and in want of repair, all of which was unknown to the plaintiff and his said coemployee, but was well known to the defendant and its employees, or should have been known to the defendant corporation by the use of reasonable care and diligence; and that by reason of the sudden ascent of said elevator, without notice as aforesaid to the plaintiff or his said coemployee, the plaintiff's said coemployee was compelled to release his hold upon a block of ice which he was holding at the mouth of said chute

while waiting for the order from the plaintiff to release the same, and to jump on said elevator, in order to protect himself from injury, which said block of ice, when so released, descended said chute into the car in which the plaintiff was standing at a rapid rate of speed, and without the knowledge of the plaintiff who was engaged at the time in placing in position in said car another block of ice, and the plaintiff's right foot and leg were caught between said descending block of ice and other ice already in said car, and were crushed," etc.   It is unnecessary to quote further from the declaration.

The plaintiff's evidence tended to support the averments in his declaration.   He proved the existence of a contract between the defendant and the American Ice Company, under which the defendant sold at its plant its entire output of ice to said ice company, "the said party of the second part (the ice company) to have the right, at all times, of access to the premises of said party of the first part (the defendant), for the purpose of taking the said ice, and to have the free and unobstructed right to use the office, telephone, *and other facilities* of said party of the first part for all reasonable purposes in connection with the carrying into effect of this contract."

The evidence as to how the accident occurred was in substance as follows:   The car was from 20 to 25 feet from the elevator door, and the chute extended from the door of the elevator to a door in the side of the car, there being a buffer in the opposite side of the car to receive the impact of the ice as it came down the chute.   Upon this occasion six blocks of ice, weighing 300 pounds each, a not unusual load, were taken up on the elevator.   Plaintiff was in the car, his assistant in the elevator.   Three of the six blocks had been sent down. The assistant was standing astride the fourth block, with his back to the car, the block balancing on the edge of the elevator and the edge of the chute, and held by the assistant's tongs. This was the usual method of operation.   The elevator, according to the testimony of the assistant, "gave a sudden jerk" and moved upward, necessitating an equally sudden release of the cake of ice, which of course slid down the chute.   Owing

to the suddenness of the occurrence, the assistant was unable to warn the plaintiff, and he, while in the act of removing the cake which had preceded this fourth cake, was struck and his foot severely injured. The elevator jumped about 4 feet before it was stopped.

There was evidence tending to show that this elevator had been out of repair for some time, and that its condition was known, or ought to have been known, to the defendant; that it would not stand still but would move up or down; that its condition was due to deterioration in the packing of the piston and leaky shifter or pilot valves; that such a condition could be easily corrected and was easily discoverable; that defective or deteriorated piston packing, or leaky shifter or pilot valves, might cause the elevator to jump up when relieved of part of its load.

The evidence on the part of the defendant was to the effect that while there had been complaints that the elevator would creep up of its own accord, there had been no complaint that it had ever moved as suddenly as upon this occasion. The engineer in charge of the elevator at the time of the accident testified: "I never had any complaints that the elevator went up suddenly, but there were complaints that it would creep up. I got such a complaint three or four days before the accident, to the best of my recollection. I could not tell who made those complaints, as there were so many around there using the elevator. First one would complain, and then another." This witness further testified that he put new packing around the plungers two or three days before the accident, but did not at that time fix the valves, as they did not need it. He admitted, however, that he did not examine the valves, nor did he look at the cups. There was also evidence on the part of the defendant tending to show that the leaks described by plaintiff's witnesses would not cause the elevator to jump up. The engineer, to whom reference has been made, admitted, however, that "if there was a leak in the pilot valve, the elevator then would naturally creep up a little just as the pressure would leak

through.   The speed at which it would creep up would depend largely on the leak."

At the close of plaintiff's evidence the defendant moved for a directed verdict on the ground of no showing of negligence. The court ruled that inasmuch as there was evidence tending to show a leaky condition of the elevator, "and that the defendant was told about it, and that it was a condition that ought to have been remedied," he would then deny the motion.   At the close of all the evidence the defendant renewed its motion, which was granted upon the ground that, assuming that the elevator was out of repair,—in other words, assuming the negligence of the defendant,—it did not appear that that negligence was the proximate cause of the injury.

*Mr. George E. Hamilton, Mr. Michael J. Colbert, Mr. John W. Yerkes,* and *Mr. John J. Hamilton* for the appellant.

*Mr. Frederic D. McKenney, Mr. John S. Flannery, Mr. William Hitz,* and *Mr. G. Bowdoin Craighill* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

It is not disputed that the defendant owed plaintiff the duty of keeping this elevator in a reasonably safe condition. While the weight of authority is to the effect that the operator of a freight elevator is required to use only reasonable care and diligence to keep it safe, the inherently dangerous character of such an instrumentality has always been considered in the determination of the question of what amounted to such reasonable care and diligence.   Although such an elevator is intended to be used for the carriage of freight, its operation and control require the presence, upon or about it, of a human agent.

In *Wilson* v. *Escanaba Woodenware Co.* 152 Mich. 540, 116 N. W. 198, which was an action for damages resulting from an alleged defect in a freight elevator which was being so used at the time of the accident, the court said:   "This elevator, like

all other simliar ones, was an instrumentality inherently dangerous. Weak cables are certain to precede disaster if not changed, and it is the master's duty to exercise ordinary and reasonable care and diligence to discover and correct any deficiency which shall result from use or lapse of time. The degree of care in examining for defects is said to be such as a person of ordinary prudence would use under similar circumstances, and it must have a relation to the character of the machine and the gravity of the consequences of accident. Hence, ordinarily, these questions are for a jury. 1 Labatt, Mast. & S. 160 et seq.; 26 Cyc. pp. 1134, 1140, et seq.; *McDonald* v. *Michigan C. R. Co.* 108 Mich. 7, 65 N. W. 597."

In *Bruce* v. *Beall,* 99 Tenn. 303, 41 S. W. 445, the court, speaking of the degree of care required of the master operating a freight elevator, said: " 'And it may be added that this duty of the employer to excrcise reasonable care to see that the machinery and its appliances which he provides for his employee, are suitable and sufficient, and as safe as care and skill can make them, is 'in proportion to the importance of the business and the perils incident to it.' *Nashville & C. R. Co.* v. *Elliott,* 1 Coldw. 616, 78 Am. Dec. 506; *Nashville & D. R. Co.* v. *Jones,* 9 Heisk. 28."

In *Wise* v. *Ackerman,* 76 Md. 375, 25 Atl. 424, Mr. Chief Justice Alvey, in delivering the opinion of the court, said: "But an elevator is in many respects a dangerous machine, and though it may be primarily intended only as a freight elevator, yet, if the employees, in the course of their employment, are authorized or directed to use the elevator as means of personal transportation, the employer, controlling the operation of the elevator, is required to exercise great care and caution both in the construction and operation of the machine; so as to render it as free from danger as careful foresight and precaution may reasonably dictate." See also *McGuigan* v. *Beatty,* 186 Pa. 329, 40 Atl. 490.

The jury, therefore, in determining the question as to what would constitute reasonable care on the part of the defendant in keeping this elevator in repair, are entitled to take into con-

sideration the character of this instrumentality, its liability to get out of repair, and the consequences reasonably likely to ensue from any negligence in that regard. The evidence tends to show a condition to which the sudden upward movement of the elevator was directly attributable. It also tends to show that such condition was known or ought to have been known to the defendant, owing to its easily discoverable character. It was therefore for the jury to say whether, upon the whole evidence, the defendant had exercised rasonable care and diligence.

The rules of law governing the determination of the question as to what is the proximate cause of an injury have been so many times discussed, both in the Supreme Court of the United States and in this court, that it would be a waste of time to do more than cite the cases upon that question. *Atchison, T. & S. F. R. Co.* v. *Calhoun,* 213 U. S. 1, 53 L. ed. 671, 29 Sup. Ct. Rep. 321; *Munsey* v. *Webb,* 37 App. D. C. 185; *Steven* v. *Saunders,* 34 App. D. C. 321; *Washington, A. & Mt. V. R. Co.* v. *Lukens,* 32 App. D. C. 442. The practical question here is whether, in the sequence of events between the defendant's default,—assuming for the present that there was such a default,—and the plaintiff's injury, an entirely independent and unrelated cause intervened, or whether that injury was the immediate, natural, and probable consequence of such default.

Certainly plaintiff's injury was traceable to the defendant's negligence. Under the evidence the jury would have been warranted in finding that but for that negligence the accident would not have occurred. This elevator was furnished for the very use to which it was being put. The chute was one of the instrumentalities by which the loading of the ice was effected. It formed the necessary connection between the elevator and the car, and projected on an incline from one to the other. When, therefore, a cake of ice was released into the chute at the elevator door, it was inevitable, under the law of gravity, that it would be precipitated into the car. This the defendant must have known. Taking into consideration all

the circumstances attending the accident, we think it clearly a question for the jury to determine whether the result was the natural and probable consequence of the defective condition of the elevator, if defect there was, and hence that such result ought to have been foreseen by a reasonably prudent man. Had the coemployee been injured by being thrown outside the elevator when it jumped, would it not be evident that the defective condition of the elevator was the proximate cause of his injury and yet the evidence before us would have warranted the jury in finding that the jumping of the elevator was the cause of the sliding of the cake of ice which, when released, was bound to be precipitated to the other end of the chute, where the plaintiff, in the proper discharge of his duties, was likely to be. Again, supposing there had been no chute and the ice had been thrown to the ground, cake by cake, as called for by plaintiff. Had the plaintiff, while immediately below the elevator door in the proper discharge of his duties, been struck by a cake of ice prematurely projected from the elevator by its jumping, as in this case, could it be contended that the jumping of the elevator was not the proximate cause of the injury? We can see no real difference between such a case and the present. The cake of ice, if prematurely released, was as certain to reach the plaintiff in one case as in the other. Without further elaboration, we rule that the case should have been submitted to the jury.

Judgment reversed, with costs, and the cause remanded for further proceedings. *Reversed and remanded.*