LOCKE, INC. ET AL. *v.* SONNENLEITER

[No. 48, October Term, 1955.]

444

*Decided December 5, 1955.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON and HAMMOND, JJ

*Samuel S. Smalkin,* with whom were *Rollins, Smalkin, Weston & Andrew* and *Ginsberg & Ginsberg* on the brief, for the appellants.

*J. Calvin Carney* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The jury returned a verdict for the plaintiff in a personal injury case and the defendants, in this appeal,

claim (1) that the trial court erred in allowing testimony of prior accidents in which the appliances that caused the damages here were involved; (2) that there was not sufficient evidence of negligence to justify the submission of the case to the jury; and (3) that the testimony as to loss of earnings by the appellee was too vague to form the basis of a verdict other than speculative. All of the errors claimed were properly brought to the attention of the trial court. The appellants objected to the testimony of prior accidents, moved for a directed verdict and made specific objections to those portions of the court's charge which they thought were erroneous and prejudicial and, finally, after the jury had found against them, moved for a new trial and a judgment N.O.V.

The appellants are engaged in the manufacture of insulators. In this process they use in one room a number of presses, some die presses and others punch presses. Into the latter are fed flat steel bars eighteen to twenty feet long, one and a half inches wide and three-eighths of an inch thick, each weighing between forty and fifty pounds. To enable the bars to be fed into the presses, there are steel racks, or low tables, fifteen to sixteen feet long, adjustable in height and with a top three or four feet wide. The tables or racks have angle iron frames on the top of two scissor jack bases and move about on casters. The bars are moved in bundles of forty to fifty, a bundle being perhaps a foot high, and are brought to the tables by a hoist on a monorail attached to the ceiling. The intention and the effort is to keep the center of the table under the center of the monorail, so that the bundle of bars will come down onto the middle of the table. Since the table is portable, it would not on occasion be centered under the monorail, in which case men either pushed the table under the load or swung the load to the center of the table. Just prior to the accident, the appellee, who operated his own business as a tool and die maker, was called to the plant of the appellants by their superintendent to make changes and corrections in a die he had made for them. He

worked with a Mr. Arnold, an employee of the appellants. While they were checking the trouble with the die, one of the tables or racks, two to two and a half feet behind them, toppled over sideways in their direction and some of the steel bars, which had been on the table, fell upon the appellee's foot, breaking the big toe. The appellee knew no more of what happened than has been recited. In support of his case, he called Mr. Arnold, who testified that when they began work on the die press, there was on the table a half bundle of bars, which would be some twenty bars, and that Cottman, a fellow workman doing his regular work as the hoist operator, had put another bundle on top of the half bundle just prior to the falling of the table. He was asked how the bundle was located on the table, and he answered: "* * * on top of the other steel that they had had there" and that all of the steel was on the one side of the table and nothing on the other side. He was then, without objection, asked the following question: "If you put all of the weight on one side of the table, what does it do to it?" and his answer was: "It will topple over". So far as he knew, nobody except the crane operator was working at or loading the table in the half to three-quarters of an hour that he and the appellee were working on the die press, and during that time the additional bundle of steel was placed as he had testified.

Arnold also testified over objection that the table involved in this case, or other tables identical to it, had toppled or buckled before and that he had seen them do so a number of times in the years he had been working in that department, and that the tables either topple over or buckle if too much weight is put on one side.

The rule followed by the majority of the cases is that if the evidence as to past accidents, tendencies or defects is sufficiently relevant and illuminating because there is similarity of time, place and circumstance, it will be admissible—not as direct evidence of negligence but to show the existence of a danger or defect in the character of a place, method or appliance and to show knowledge

or notice of the danger or defect on the part of the defendant, unless, in its discretion, the trial court believes it will cause an unfair surprise or confusion by raising collaterial issues. *Wigmore on Evidence,* Third Ed., Vol. 2, Sec. 443-444, 252, 451, 458; *McCormick on Evidence,* Sec. 167; 65 C. J. S., *Negligence,* Sec. 234; 128 A. L. R. 595. In *Sears, Roebuck & Co. v. Copeland,* C. C. A. 4, 110 F. 2d 947, evidence of a prior accident on faulty steps was held proper. Judge Soper said for the Court that the general rule is "* * * that evidence of this kind is relevant if it relates to an occurrence which happened under substantially the same conditions, at substantially the same place as the accident in suit, and at a time not too remote therefrom. * * * [citing cases]. Such evidence tends to show the dangerous qualities of the thing or place, and knowledge of these qualities on the part of the owner or possessor."

Maryland cases have not been entirely consistent in passing on the question. In *Wise v. Ackerman,* 76 Md. 375, the plaintiff, while riding on an open freight elevator, was injured by scantlings or boards in too close proximity to the elevator. It was held that it was improper to admit evidence of a prior similar accident in a similar elevator in the same building. The court held that this evidence could not legally form the basis of an inference of negligence. The direct holding in the case is that evidence of other similar occurrences is not admissible to prove that the accident occurred by the negligence of the defendant and without the fault of the plaintiff. The *Wise* case was cited as recently as *Smith v. Hercules Co.,* 204 Md. 379, where the Court said: "Evidence of other accidents, *particularly where the circumstances are not identical,* have little probative value and are calculated to prejudice the jury." (Emphasis ours.) In the *Wise* case, the Court qualified its decision in this language: "This is not analogous to the case of an attempt to affect a defendant with knowledge of a negligent habit of an employee, as in *Elevator Co. v. Neal,* 65 Md. 453, nor to that of a case of a latent defect in machinery,

or want of repair in a road or bridge, and the simple fact of a former accident is allowed to be proved as means of affecting the defendant with or bringing home to him, knowledge of such supposed negligent habit, or defect or want of repair. But here, the former accident, occurring to the witness, did not happen on the same elevator upon which the plaintiff received his injury, *nor did that accident happen under the same condition.* The fact, therefore, was wholly collateral." (Emphasis ours.)

In *Cordish v. Bloom,* 138 Md. 81, 93, the injury was alleged to have been caused by a defective condition in a cellar door on the pavement that caught the foot of the passerby. Chief Judge Boyd said for the Court, after referring to *Wise v. Ackerman* and quoting the language which we have just quoted, that the plaintiff could prove that other accidents had occurred in the same manner so as to bring home notice to the defendant and to show that the accident could have happened as the plaintiff said it did and that such a result would not conflict with what was held in the *Wise* case. *Professor Wigmore,* in a note to be found on page 478 of Vol. 2 of the Third Edition of his work on *Evidence,* found *Cordish v. Bloom* as "(* * * not expressly disapproving *Wise v. Ackerman* in rejecting such facts as evidence of condition, but virtually allowing such use of it; why should not the Court frankly acknowledge the correct rule?)." In *Hagerstown & Frederick Ry. Co. v. State,* 139 Md. 507, 510, a limb fell from a tree and across an electric wire of the defendant, causing electrification of a fence and the death of a passing boy. It was shown by the testimony that the limb was decayed, that it extended over the highway so that obviously it would strike the wire of the defendant if it fell, that the weather was clear on the day it fell, and that other limbs had fallen under similar circumstances because of decay. The Court said, in speaking of the evidence relating to other limbs from the tree: "That evidence, in connection with the other evidence we have mentioned, was not only admissible for the purpose of showing that the

tree was decayed, but also for the purpose of showing that the defendant could, by the exercise of reasonable care, have known of its dangerous condition." In *Morgenstern v. Sheer*, 145 Md. 208, 221-2, a business visitor fell into an elevator shaft by reason of the darkness of the corridor and the unguarded opening. A witness was permitted to testify that on another occasion he sought the elevator in the manner that the plaintiff had, and that he had almost fallen into the elevator pit before he suddenly realized the danger. The Court said that the evidence was not admissible under the rule of *Wise v. Ackerman* for the purpose of showing that the accident happened to the plaintiff in the manner testified to by him, or that it occurred without any fault or negligence on his part, but that "* * * it was admissible, we think, as describing the scene of the accident and for the purpose of showing the dangerous condition of the entrance and hallway by reason of the location of the elevator shaft." In support of the admissibility of the evidence of the other visitor for the purposes stated, the Court observed that in *Cordish v. Bloom, supra,* Chief Judge Boyd had quoted the statement of Mr. Justice Fields in *District of Columbia v. Armes,* 107 U. S. 519: " 'The frequency of accidents at a particular place would seem to be good evidence of its dangerous character, at least it is some evidence to that effect,' and the statement in *Kankakee v. Phipps,* 135 Ill. App. 585: 'Evidence of similar accidents from the same cause is competent, not for the purpose of showing independent acts of negligence, but as tending to show that the common cause of the accidents is a dangerous, unsafe thing,' * * *."

In *Cumberland v. Turney,* 177 Md. 297, 318, Judge Offutt said for the Court: "* * * the only evidence that the curve as constructed is negligently unsafe is that afforded by the fact that accidents frequently occur there. But such evidence, while admissible (*Wise v. Ackerman,* 76 Md. 375, 391, 392, 25 A. 424), is, because of its collateral nature and the difficulty of inquiring into the causes of the other accidents, unsatisfactory * * *."

He then quotes Am. Jur. to the effect that evidence of prior similar accidents, when admissible, is so only: "(1) To show the existence of a defective or dangerous condition or appliance and the dangerous character of the place of injury or of the machine or the appliance, and (2) to show the defendant's notice or knowledge thereof" and not for the purpose of showing negligence as such or to prove the cause of a specific occurrence. In *Town of Princess Anne v. Kelly,* 200 Md. 268, 273, the Court found that there was evidence of negligence on the part of the Town in failing to repair a hole in the pavement that it had known of for a long time. The Town made the point (somewhat lacking in relevance and pertinence in view of the other evidence of negligence, as the Court found), that there was no showing of prior accidents at the point. In passing, the opinion disposed of the argument in these words: "Evidence of prior accidents has been held to be admissible in Maryland for its bearing on the question of notice, rather than to show that the condition was in fact dangerous. *Cordish v. Bloom, supra,* 138 Md. at page 93, 113 A. at page 583; *Wise v. Ackerman,* 76 Md. 375, 25 A. 424. But see *Morgenstern v. Sheer,* 145 Md. 208, 222, 125 A. 790 * * *."

In our opinion the rule makes evidence of prior accidents or defects admissible, not only to show notice, but as bearing on the dangerous nature or tendency of the place or appliance involved in the current accident.

We think the trial court did not err in admitting the evidence that on prior occasions the witness had observed tables, identical to the one in question, to topple over when too much weight in the form of steel bars, which they were designed to accommodate and did accommodate, was placed on one side of them. There was identity of place, circumstance and things, and methods and, in effect, the witness was saying merely that the tables and the bars were loyal subjects of the kingdom of physics who unwaveringly obeyed the laws of that kingdom. The fact that the table here involved was not

specifically identified as one previously observed would not be material. The tables were substantially identical. *Hagerstown & Frederick Ry. Co. v. State, supra,* cited on this point by *Sears, Roebuck & Co. v. Copeland,* cited above, where different treads were involved.

We think, too, that with the evidence of prior occurrences in the case, there was sufficient evidence of negligence of the appellants to go to the jury. The jury could have found from the testimony that there was a half bundle of bars on the table directly behind the appellee at the time he started to work, and that between that time and the time the accident occurred, an additional bundle, weighing about a ton, was placed on top of the half bundle and that all the bars were on one side of the table, that the appellant had notice, actual or constructive, that so piling the bars to such an extent would cause the table to fall or topple over and be likely to spill some of the heavy bars, that they intended always to place the bars in the center of the table, that they failed to do so in this case, and that this failure was not the conduct of an ordinarily prudent person armed with the knowledge of the appellants. The appellee was a business invitee to whom was owed the duty of ordinary care.

The appellee argued in this Court the applicability of the doctrine of *res ipsa loquitur.* He did not rely upon it in the court below, at least not until he answered the motion for a new trial. The trial court charged the jury, not on this theory but on the theory that the appellee had sought to show negligence and that the jury must find negligence if he were to prevail, and at the conclusion of the charge, the appellee stated that he had no objections to it and made no request that it be amplified to instruct the jury as to *res ipsa loquitur.* In any event, since the jury found that the appellee had met the burden of proving negligence, we have only to consider whether the court's charge on that theory was adequate and free from prejudice to the appellants.

The court instructed the jury that the mere happening of this accident is no indication or proof that it was due to any negligence on the part of the employees of the defendant. Also, it told them that if they found that the occurrence was unavoidable and not to be foreseen or prevented by vigilance, care and attention of the employees of the defendant, and not occasioned or contributed to in any manner by them, then the verdict must be for the defendant. The charge went on to say that the jury must determine "* * * whether the table was caused to topple over because of the way the iron bars were put on it. * * * if you are not satisfied from the evidence that the table toppled over because of the way the iron bars were put on it, then I would say that you would have to render a verdict for the defendant." It continued: "On the other hand, if you are satisfied from all the evidence that the table did topple over because of the way the bars were placed on it, that of itself is not sufficient to justify a verdict for the plaintiff * * *" unless you further find from the method or in the way the bars were placed on the table some negligence or lack of ordinary care which caused the table to topple over, and that negligence in this case means failure to exercise ordinary care, and failure to act under all these circumstances as an ordinarily prudent person would have acted in placing the bars on the table. Contributory negligence was then gone into. We find that the charge fully and properly presented all the defenses to which the appellants were fairly entitled.

We find no merit in the appellants' contention that the appellee's evidence was too vague for the jury to find what loss and damage he had sustained. It was shown that the appellee employed two men in his tool and die business, paying them $100.00 a week, and charged those for whom work was performed $4.00 to $6.00 an hour for their services, depending on the intricacy of the job. The appellee worked with his men and charged the same amount for his services. He worked five eight-hour days a week and a half day on

Saturday, and many hours of overtime. He was incapacitated for seven weeks. During that time the employees did only the most urgent jobs, leaving the others until later. There was more work during the seven weeks than they could handle and, for that time, the appellee, as he said, made only two profits instead of three. If the jury, as well it might have, estimated that he lost $5.00 an hour for a forty-hour week, his loss of earnings would have been $1,400.00. His medical expenses were approximately $200.00. He suffered a comminuted fracture of his large toe on his left foot, which required the use of a metatarsal arch support and crutches. There was medical testimony that he had a five per cent residual disability of his left foot. The jury awarded him a verdict of $2,000.00, which we think was warranted by the evidence before them. It may be noted that the appellants did not offer testimony to controvert or show error in the figures submitted by the appellee, but merely relied on the claim of vagueness.

*Judgment affirmed, with costs.*