732 A.2d 994

William M. BUTKIEWICZ

v.

STATE of Maryland et al.

No. 1661, Sept. Term, 1998.

Court of Special Appeals of Maryland.

July 8, 1999.

Leonard Koenick (Kivitz & Liptz, LLC, on the brief) Chevy Chase, for Appellant.

Timothy J. Paulus, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Lisa A. Barkan, Asst. Atty. Gen., on the brief), Baltimore, for Appellee, State of MD.

Mark Rosasco (Lisa A. Howie, on the brief), Annapolis, for Appellee, Nationwide Ins. Co.

Argued before HOLLANDER, THIEME, and PAUL E. ALPERT (Retired, specially assigned), JJ.

HOLLANDER, Judge.

On November 17, 1995, William M. Butkiewicz, appellant, was injured in a three-car lane change accident involving automobiles driven by Robert J. Matty and Dr. Asresu Masikir, an epidemiologist with the Maryland Department of Health and Mental Hygiene. At the time of the accident, Masikir was driving a car owned by the State of Maryland, appellee. On February 3, 1997, Butkiewicz instituted suit in the Circuit Court for Prince George's County against the State of Maryland, Matty, and his own insurer, Nationwide Insurance Company ("Nationwide"), appellee, for underinsured motorist benefits. On March 4, 1997, Nationwide filed a cross-claim against Matty. After a three-day trial, the jury found the State liable for the accident, but awarded Butkiewicz damages only for his medical expenses ($22,565.00) and lost wages ($3.302.00). The jury did not award appellant any damages for future medical expenses or for pain and suffering.

Appellant presents two issues for our review, which we have rephrased and condensed: [1]

---

1. Appellant's phrased the issues as follows:
   I. Where there is indisputable evidence of open and obvious painful surgery, requiring skin grafting and permanent and visible scarring, · may a jury refuse to follow the court's instructions by refusing to award any [damages for] pain and suffering?
   II. Where there is indisputable evidence of open and obvious painful surgery, requiring skin grafting and permanent visible scarring and a

Because the jury failed to award damages for pain and suffering, did the court abuse its discretion in denying appellant's motion for new trial on the issue of damages?

We answer that question in the negative and affirm.

## Factual Background

In view of the issue presented, which concerns damages, our discussion of the factual background focuses primarily on aspects of the evidence relating to appellant's injuries.

At the time of the accident, appellant was 29 years old. He testified that, at 7:30 on the morning of November 17, 1995, he was driving 60 miles per hour in his 1990 Ford Mustang, proceeding northbound in the left lane of Interstate 95, *en route* to his job in Baltimore. Dr. Masikir's car was in the middle lane, approximately "four to eight car lengths" in front of appellant's car. According to Butkiewicz, Dr. Masikir made an "abrupt, sharp left-hand turn" into appellant's lane. In an effort to avoid the vehicle, appellant swerved on the shoulder, but to no avail. Dr. Masikir's car struck appellant's vehicle on the passenger side. Appellant was then "bumped" from behind by Matty's car, causing appellant's vehicle to careen off the expressway. Butkiewicz testified that his car knocked down a road sign and spun repeatedly before coming to rest in the median, facing oncoming northbound traffic. Appellant then crawled out of the vehicle on the passenger side.

In the following colloquy, appellant described the aftermath of the accident:

[Appellant's Counsel]: After your car came to a stop, can you please tell us how you were feeling?

[Appellant]: I guess I was feeling very grateful to be alive after something like that. After I had settled down from feeling thankful that I was alive, I did have the feeling of

jury refuses to follow the court's instructions and awards nothing for pain and suffering, is the court's refusal to grant a motion for new trial an abuse of discretion?

pain I noticed especially in my left thigh and also in my neck and back area.

[Appellant's Counsel]: What did you do then?

[Appellant]: Crawled out the passenger side of my car. I couldn't get out of the driver's side. Another vehicle was directly next to mine, and I couldn't even stand. I tried to stand, but I couldn't. The pain was quite severe in my left thigh.

[Appellant's Counsel]: What did you do if you couldn't walk?

[Appellant]: I crawled.

[Appellant's Counsel]: Where did you stop crawling?

[Appellant]: There's an embankment there in the median, and I tried to get up the hill to the trees.

Maryland State Trooper Brian Willets arrived on the scene shortly after the accident. He testified that he saw Dr. Masikir's 1993 Dodge Shadow parked on the shoulder and left lane of the highway. Matty's vehicle, a 1992 Lexus 400, was in the median adjacent to appellant's car. Appellant was "laying beside his vehicle, right outside his vehicle ... in the median...." According to Trooper Willets, appellant told him at the scene that he thought his leg had been broken. Willets could not remember if appellant had any cuts or abrasions, but he remembers that "he [Butkiewicz] was in extreme pain with his leg."

An ambulance transported appellant to the Greater Laurel Beltsville Hospital. There, Butkiewicz complained of pain in his neck, back, and left thigh. The hospital staff took x-rays of his left thigh and provided him with pain medication. After approximately two hours, appellant returned home. The following testimony is also relevant:

[Appellant's Counsel]: Once you got home, can you please tell us how you were feeling?

[Appellant]: The pain in my thigh, if you can ever experience a migraine, times it by ten. The pain in my neck, it didn't matter. The pain in my back I didn't feel. The pain

in my thigh was the most pain I've ever experienced in my whole life. I've experienced pain not just from accidents and motorcycles and sports pain, but this pain was so severe, like I said, if you've every had a migraine, it's time ten. It's almost like being dropped—.

[Appellant's Counsel]: How did the leg feel over the next 24 hours, when you got home that evening until the next day?

[Appellant]: The pain became so severe, and the swelling. From my knee area up the outside of my thigh swelled up really like a beach ball or double the size of it, like a Halloween pumpkin. It was huge with the pain, and it became very warm. The pain again was something. It was very, very severe.

The following day, appellant's primary physician instructed him to visit the emergency room at Suburban Hospital. The attending emergency room physician referred appellant to an orthopedic surgeon, Dr. Edward Bieber. According to appellant, Dr. Bieber diagnosed the injury as a "compartment syndrome", which caused a reduced blood flow to the bottom of appellant's knee.

Dr. Bieber testified by way of a videotaped deposition. At Dr. Bieber's recommendation, appellant underwent a fasciotomy that afternoon——a procedure that resulted in an incision 240 millimeters (9.6 inches) long and approximately 100 millimeters (4 inches) wide. Two days later, appellant had another surgery, in which skin from his right leg was grafted onto the wound on appellant's left thigh. After the accident, appellant underwent physical therapy until April 1996, when Dr. Bieber discharged Butkiewicz from his care. Nevertheless, appellant testified that he still experienced pain from the injury. The following colloquy is relevant:

[Appellant's Counsel]: Mr. Butkiewicz, at the time of your discharge, would you please tell us what if any pain or other problems you had with that left side?

[Appellant]: Continued I would say pain, and it's not just from exercising or walking. It comes from sitting for long periods of time. Any time—even sleeping I can tell you

that I'm awake at least once a night because of some sort of pain in my leg after four or five hours of sleep.

[Appellant's Counsel]: At the time that you were discharged, what if any numbness or lack of sensation did you have in your leg?

[Appellant]: That area is completely numb where the skin graft was done. From my knees to my groin, that area is numb. My thigh where the graft area is, there's uncontrollable switching [sic] occasionally in my leg area. The numbness is the scary part because literally I can't feel anything. It's like it's not there, but it is there. I could probably get punched or stung by a bee and I would never know. And I could probably get an infection and I would really never know, because I never feel it.

Butkiewicz claimed that he was "considering" reconstructive plastic surgery for his left thigh, and had consulted Dr. Jorge Reisin, a plastic surgeon, in April 1996. Although the idea of plastic surgery was "in the back of his mind," Butkeiwicz could not testify as to the cost of such surgery.[2]

Appellant further testified that, after the accident, he was forced to leave his part-time job as an inventory clerk for a chain of grocery stores, because the work involved "a lot of going up and down shelves." Appellant estimated that he missed 316 hours of work between November 17, 1995 and March 23, 1996. At the time, his salary was $10.45 per hour.

A recurrent theme of appellant's case at trial was his life-long aspiration to play professional golf. Because of the injury to his leg, appellant testified that his "dreams" of reaching the PGA tour were "lost." Although appellant had participated in a prestigious amateur golf tour, he acknowledged on cross-examination that he had never earned any money playing golf.

---

**2.** In a videotaped deposition admitted as evidence, Dr. Reisin opined that reconstructive plastic surgery would cost "approximately $10,-000."

Appellant's wife, Mia Kim Butkiewicz, testified that she, too, was driving to work on Interstate 95 on the morning of the accident when she passed by the scene and recognized her husband's car in the median of the highway. She testified that when she approached him, he was "very pale" and "in a lot of pain." Through Ms. Butkiewitcz, appellant admitted as evidence a series of color photographs of appellant's wound taken by her immediately after the skin graft surgery.

Dr. Michael April also testified for appellant as an expert in "physical medicine and rehabilitation." At the suggestion of appellant's attorney, Butkiewicz consulted Dr. April on October 11, 1996. After an interview and a physical examination of appellant, Dr. April concurred with Dr. Bieber's original diagnosis of a "compartment syndrome". The doctor noted that appellant's knee was "restricted" and that he "didn't have full motion of his left knee compared to the right knee, and [appellant] continued to have pain, which [Dr. April] felt was muscular." Moreover, Dr. April observed that appellant suffered from "numbness" and an inability to sweat in the wound area.

Dr. April recounted that, on March 23, 1998, he examined appellant again. Dr. April described appellant's condition in March of 1998 as "about the same" as when he saw him before. According to Dr. April, appellant

[s]till had the ache in his leg, still could not walk long distances, still had trouble playing golf . . . The numbness didn't change. The whole outside of his leg was numb. There also was trouble because of the skin graft. He wasn't really able to sweat on the outside of the leg . . . His knee did not have the normal motion that he had on the right side.

In Dr. April's opinion, appellant's injury was permanent. Moreover, Dr. April proffered that the injury had affected appellant's ability to play golf.

On cross-examination, Dr. April conceded that his October 11, 1996 diagnosis was based primarily on the medical history as it was conveyed to him by Butkiewitcz; Dr. April had not

reviewed Dr. Bieber's notes at the time of the initial diagnosis. Dr. April testified, however, that, according to Dr. Bieber's records, appellant had "minimal pain" and "excellent range of motion" prior to his discharge from Dr. Bieber's care. Dr. April also acknowledged, on cross-examination that Butkiewitcz told him that he was a professional golfer.

At the conclusion of the evidence, the court prepared a verdict sheet which included a damage itemization for past medical expenses, past lost wages, non-economic damages, and future medical expenses. The court instructed the jury, in pertinent part:

In the event that you find for the Plaintiff on the issue of liability, then you must go on and consider the question of damages. It will be your duty to determine what if any award will fairly compensate the Plaintiff for his losses.

I instruct you that the burden is on the Plaintiff to prove by a preponderance of the evidence each item of damage claimed to be caused by the Defendant. In considering the items of damage, you must keep in mind that your award must adequately and fairly compensate the Plaintiff, but an award should not be based on guesswork.

In considering damages in a personal injury case, you shall consider the following: the personal injuries sustained and their extent and duration; the effect such injuries have on the overall physical and mental health and well-being of the Plaintiff; the physical pain and mental anguish suffered in the past and with reasonable probability may be expected to be experienced in the future; the disfigurement associated with the accident; the medical and other expenses reasonably and necessarily incurred in the past and which, with reasonable probability, may be expected in the future.

In awarding damages in this case, you must itemize your verdict or award to show the amount intended for medical expenses incurred in the past, medical expenses reasonably probable to be incurred in the future, the non-economic damages sustained in the past and reasonably probable to be sustained in the future.

Non-economic damages are all damages which you may find for pain, suffering, inconvenience, physical impairment, disfigurement, or other non-pecuniary injury.

As we mentioned earlier, the jury found the State liable, based on Masikir's negligence, and awarded appellant a total of $25,867.00 in damages for past medical expenses and lost wages, which sum is equal to the exact amount requested by appellant for those categories of damages. The jury did not award any non-economic damages, however. Judgment was entered against Nationwide and the State on May 11, 1998. On May 15, 1998, pursuant to Md. Rule 2–533, appellant filed a motion for new trial. After the court denied the motion, appellant timely noted his appeal.

We will include additional facts in our discussion.

### Discussion

Appellant contends that he is entitled to a new trial on the issue of damages because, having determined that the State is liable, the jury failed to award money damages for pain and suffering. In appellant's view, the jury's failure to award non-economic damages contravened the court's instruction that, "[i]n considering damages ..., [the jury] shall consider ... the physical pain and mental anguish suffered in the past and with reasonable probability may be expected to be experienced in the future; the disfigurement associated with the accident...."

■ We review a trial court's denial of a motion for new trial based on an abuse of discretion standard. *Aron v. Brock*, 118 Md.App. 475, 511, 703 A.2d 208, *cert. denied*, 346 Md. 629, 697 A.2d 913 (1997); *Buck v. Cam's Broadloom Rugs, Inc.*, 328 Md. 51, 57, 612 A.2d 1294 (1992); *Mack v. State*, 300 Md. 583, 600, 479 A.2d 1344 (1984). The Court of Appeals observed in *Buck* that, in considering the latitude afforded to trial judges,

the emphasis has consistently been upon granting the broadest range of discretion ... whenever the decision has necessarily depended upon the judge's evaluation of the

character of the testimony and of the trial when the judge is considering the core question of whether justice has been done....[F]or example, ... *"[w]e know of no case where this Court has ever disturbed the exercise of the lower court's discretion in denying a motion for a new trial because of the inadequacy or excessiveness of damages."*

*Id.* at 57–58, 612 A.2d 1294 (quoting *Kirkpatrick v. Zimmerman,* 257 Md. 215, 218, 262 A.2d 531 (1970))(Emphasis added).

In *Buck,* the Court also said that "the breadth of a trial judge's discretion to grant or deny a new trial is not fixed and immutable; rather, it will expand or contract depending on the nature of the factors being considered...." 328 Md. at 58–59, 612 A.2d 1294. Thus, "a trial judge has virtually no 'discretion' to refuse to consider newly discovered evidence that bears directly on the question of whether a new trial should be granted," but the trial court's latitude is at its broadest when the "exercise of [its] discretion depends upon the opportunity the trial judge had to feel the pulse of the trial and to rely on his own impressions in determining questions of fairness and justice." *Id.* at 58–59, 612 A.2d 1294.

Appellant contends that the discretion described in *Buck* was truncated in this case by the jury's failure to follow the explicit instructions of the trial court. "It is axiomatic," appellant states, "that a jury must follow the court's instructions." Thus, "if it is found that the jury failed to follow the court's instructions, the court must set aside the jury verdict." Appellant takes great pains to insist that the trial court did not have the discretion that is usually afforded to a court deciding a motion for a new trial. He states:

So there will be no mistake, Mr. Butkiewicz points out that his argument is not that the jury's verdict was against the weight of the evidence. A decision on granting a new trial may, in such a case, be left to the discretion of the trial judge. In the instant case, rather, the jury's verdict was against the indisputable and undisputed evidence of pain and disfigurement.

■ We are unpersuaded. Appellant's argument presumes that if the jury found one of the defendants liable for the accident, the jury instructions then *required* the jurors to award damages for pain and suffering. To be sure, that may be the usual course. But, the court's instructions did not *require* such an outcome. Indeed, the court did not instruct the jury that it *must* award non-economic damages if it found the defendants liable. Rather, the court's instruction mirrored Maryland Pattern Jury Instruction 10:1, which states:

> In the event that you find for the plaintiff on the issue of liability, then you must go on to consider the question of damages. It will be your duty to determine what, *if any,* award will fairly compensate the plaintiff for the losses.

(Emphasis added).

The court also instructed the jury that appellant had the burden of proving "each item of damage" and that its award "should not be based on guesswork." Implicitly, the instructions allowed the jury to award some types of damages without awarding others, in its effort to "fairly compensate" appellant for his injuries. The verdict sheet reflected the court's charge, providing space for a separate determination of medical expenses, past lost wages, non-economic damages, and future medical expenses.

We recognize that many jurisdictions have disallowed verdicts that award medical damages without awarding damages for pain and suffering, when the plaintiff's pain and suffering damages were "proved, undisputed, or could be assumed to have resulted from the nature of the injuries involved." Todd R. Smyth, *Validity of Verdict Awarding Medical Expenses to Personal Injury Plaintiff, But Failing to Award Damages for Pain and Suffering,* 55 A.L.R.4th 186, 192 (1987 & Supp.1998). Nevertheless, the Court of Appeals has made clear that a jury's verdict in a personal injury case is not necessarily invalid when the jury awards damages for medical expenses and lost wages without also awarding damages for pain and

suffering. *Leizear v. Butler,* 226 Md. 171, 172 A.2d 518 (1961), is instructive.

In *Leizear,* Police Officer Carlton Leizear injured his neck when the police cruiser in which he was riding as a passenger was hit from behind by a taxicab. The jury found the cab driver liable for Leizear's injury, but awarded damages only in the amount of $405.92, as compensation for the victim's medical expenses, the expense of transportation for medical treatment, and lost wages. As in this case, the jury did not award damages for pain and suffering. *Id.* at 174–75, 172 A.2d 518. At trial, Leizear testified that he felt "considerable" pain following the accident, was forced to wear a neck brace, and was unable to work for two weeks. Leizear's physician also testified "as to the extent, painfulness and temporarily disabling effect of Leizear's injuries." *Id.* The cab driver contended at trial that Leizear's alleged injuries were exaggerated. To that end, the defendant presented evidence that, minutes after the accident, Leizear said he was not hurt, and went to a housewarming party for another police officer. Leizear appealed, arguing that the jury's verdict was inadequate as a matter of law because it included nothing for pain and suffering. *Id.* at 176, 172 A.2d 518.

The Court of Appeals upheld the jury's verdict. In its view, the damage award reflected the trial court's instruction to the jury that it "should consider and appraise the detriment to Leizear's health and well-being as a result of the accident." *Id.* at 179, 172 A.2d 518. Moreover, the Court recognized the discretion conferred upon the trial judge in ruling on a motion for new trial predicated on an allegedly inadequate jury award. The Court said:

> It was the province of the trial court, in the exercise of a sound discretion to grant or refuse a new trial on the claim that the verdict was inadequate because of a failure to award damages for pain and suffering, or otherwise.... There has been no showing of an abuse of discretion and the trial court's action in refusing a new trial is not subject to appellate action.

*Id.* at 179–80, 172 A.2d 518.[3]

■ Despite appellant's attempt to cast the issue in terms that would rob the court of its discretion, we believe the court's task in deciding appellant's motion for a new trial invoked precisely the sort of judgment call that justifies a broad application of the abuse of discretion standard. The question of whether appellant was entitled to non-economic damages, in addition to the damages awarded, depended intrinsically on the court's "opportunity . . . to feel the pulse of the trial and to rely on [its] own impressions in determining questions of fairness and justice." *Buck, supra,* at 59, 612 A.2d 1294. In resolving appellant's motion, the court was called upon to determine whether, notwithstanding the jury's verdict, the evidence compelled an award of damages for pain and suffering. Stated otherwise, the court had to decide if the jury's verdict was against the weight of the evidence.

The case of *Kirkpatrick v. Zimmerman,* 257 Md. 215, 262 A.2d 531 (1970), illustrates that it is not the function of an appellate court to second-guess a jury's award of damages so long as there is evidence in the record that supported the verdict. There, a plaintiff in a personal injury action challenged the court's denial of a motion for new trial because of what the appellant considered an inadequate damage award of $2,500. Like the case *sub judice,* the appellant claimed that "the jury did not follow the instructions of the trial judge and therefore the lower court abused its discretion in not granting his motion for a new trial." *Id.* at 216, 262 A.2d 531.

In describing the evidence, the Court had "no doubt that the personal injuries were severe, that the plaintiff endured much

---

3. The Court of Appeals later made clear in *Buck, supra,* 328 Md. at 56–57, 612 A.2d 1294, that "[n]otwithstanding the sometimes confusing use of language in the past," a court's disposition of a motion for a new trial is reviewable under an abuse of discretion standard. In our view, the holding in *Leizear* is not undermined by the *Buck* opinion, as *Leizear* expressly employed an "abuse of discretion" analysis, despite its broad statement that "the adequacy of the [jury's] verdict is not *reviewable* on appeal under the decisions of this Court. . . ." *Id.* at 179–80, 172 A.2d 518.

pain and suffering, that there was some evidence of permanent injury and that the medical services rendered at a United States Army Hospital were valued at approximately $3,100." *Id.* Nevertheless, the Court found no error. Noting that the jury may have relied upon a variety of reasons in limiting its award of damages, the Court said:

> Perhaps the fact that the plaintiff was not given a medical discharge from the army at the termination of his military service, or that he was engaged in construction work at the time of the trial, or the fact that his medical treatment was supplied by an army hospital, might have had something to do with it. The hard fact is that after having heard all the evidence and upon receipt of proper instructions from the court, the jury made its findings. It was within the sound discretion of the lower court to determine whether a new trial was justified. In the exercise of that discretion it ruled that it was not, and we have no intention of disturbing that decision.

*Id.* at 216–17, 262 A.2d 531.

*Grabner v. Battle*, 256 Md. 514, 260 A.2d 634 (1970), is also instructive. There, a woman injured in an automobile accident appealed a verdict of $70.00 in her favor, arguing that "the jury ignored the court's instruction concerning the assessment of damages for pain and suffering and injuries sustained by her...." *Id.* at 516, 260 A.2d 634. The jury's verdict represented the amount of property damage she claimed. The jury failed to award damages for her physical injuries, despite testimony at trial that the plaintiff had "struck her nose on the steering wheel and had been removed to a hospital in an ambulance." *Id.* at 515, 260 A.2d 634. In addition, the plaintiff had presented medical testimony that, "because of the injury, [she] was required to undergo a complete nasal reconstruction and a submucous resection." *Id.*

The Court of Appeals rejected the appellant's contention, stating:

> [I]t is a gratuitous assumption on the part of the appellant to baldly assert that the jury did not consider the question

of damages arising from personal injuries and pain and suffering.... [T]here is nothing in the record which would confirm that the jury did not consider the question of personal injury and pain and suffering. They might well have directed their attention to the elements of personal injury and pain and suffering and found them inconsequential.

*Id.* at 516–17, 260 A.2d 634.

We are also unpersuaded by the District of Columbia case relied upon by the appellant. In *Barron v. District of Columbia*, 494 A.2d 663 (1985), a woman permanently injured her face when she fell from a bicycle after she "ran into a torn-up section of an alley" maintained by the District. *Id.* at 664. In a written Memorandum Opinion and Order denying the plaintiff's motion for a new trial on the issue of damages, the trial court summarized the evidence as follows:

Witnesses at trial testified as to the extent and seriousness of plaintiff's injuries, and plaintiff herself testified as to her pain and suffering. She offered as exhibits of her lost wages and medical expenses which totalled $2,561.40. *Defendant did not attempt to contradict the evidence offered on damages;* however, the jury awarded plaintiff only $2,600.00.

*Id.* (Emphasis added). On appeal, the District of Columbia Court of Appeals emphasized that no evidence had been offered to refute the plaintiff's damages claim. Because it found no "rational explanation" for the jury's "refusal to award any but nominal recovery," and because the trial court "articulated no principled basis on which to affirm the jury award", the appellate court reversed. Unlike *Barron*, however, the record below contained evidence that could have led a jury to limit its award of damages.

As in *Grabner, supra*, we perceive no indication in this case that the jury did not "consider" appellant's overall injuries in determining "what, if any damages" fairly compensated appellant for his injuries. The jury concluded, after hearing the evidence, that $25,867 was sufficient. Indeed, there were

several aspects of appellant's case that could have prompted the jury to limit its award to economic damages.

For example, on cross-examination, Dr. April admitted that, at the time of his original diagnosis, he had not reviewed the medical records provided by appellant's treating physician, Dr. Bieber. Dr. April testified that appellant's injury permanently restricted his range of motion in such a way that it limited his ability to play golf. Yet, Dr. Bieber's report indicated that, after treatment, appellant had "excellent" range of motion. After appellant was discharged from Dr. Bieber's care, he sought no medical attention for his injury until he was referred to Dr. April *by his attorney*. Appellant also testified that he suffered pain day and night, waking at least once each night "because of some sort of pain in my leg after four or five hours of sleep." But, Dr. Bieber's medical records indicated that, at the time of his discharge, appellant complained of only "minimal" pain.

Moreover, it is axiomatic that the jury, as the trier of fact, is entitled to judge the credibility of the witnesses. *See Binnie v. State*, 321 Md. 572, 580, 583 A.2d 1037 (1991); *Gibson v. State*, 238 Md. 414, 209 A.2d 242 (1965); *Hall v. State*, 119 Md.App. 377, 393, 705 A.2d 50 (1998) (observing that "[w]eighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact-finder"); *Barrios v. State*, 118 Md.App. 384, 402, 702 A.2d 961, *cert. denied*, 349 Md. 234, 707 A.2d 1328 (1997)(stating that the jury, as the trier of fact, is charged with the task of "[w]eighing the credibility of the witnesses and resolving any conflicts in the evidence...."). Based on discrepancies in the evidence, the jury was not required to accept appellant's testimony or the testimony of his expert, Dr. April, concerning the extent of appellant's pain and suffering.

In reaching our conclusion, we are also mindful that, as the State suggests, the jury may have reached a compromise verdict, because the issue of negligence was hotly disputed.[4]

---

4. We note that, at oral argument, appellant's counsel conceded that the dispute as to liability was "serious".

To be sure, the doctrine of comparative negligence is not the law in Maryland. Nevertheless, in the politics of jury deliberations, conflict among the members of the jury as to liability may ultimately be resolved by means of reduced damages. In that regard, we note again that the jury awarded appellant the precise amount of his past medical expenses and lost wages.

Cases from other jurisdictions have refused to overturn verdicts of this sort. For example, in *Bacsick v. Barnes*, 234 Pa.Super. 616, 341 A.2d 157 (1975), the Pennsylvania Superior Court upheld a verdict awarding a personal injury plaintiff damages of $21,500 in lost wages and medical expenses, but only $2,000 in non-economic damages. The plaintiff in that case was walking in the street two days after a heavy snowfall when a passing automobile struck her, breaking her leg. The woman had been forced to walk in the street because the sidewalk was covered with snow. In affirming the jury's verdict, the court said:

> In the instant case, the evidence was such that the jurors might easily have differed as to whether or not [the defendants] were negligent in allowing the accumulation of snow to remain on or along part of the sidewalk, as to whether [the plaintiff's] act of walking along Fifteenth Avenue carrying a bundle amounted to contributory negligence, and as to whether the accident occurred because [the plaintiff] slipped and fell into [the car's] path or because [the driver of the car] ran her down.

*Id.* at 162. The court went on to observe that although "degrees of negligence" are not recognized under Pennsylvania law,

> " 'as a practical matter they are frequently taken into consideration by a jury. The net result, as every trial judge knows, is that in a large majority of cases where the evidence of negligence is not clear, or where the question of contributory negligence is not free from doubt, the jury brings in a compromise verdict.' "

*Id.* at 162 (quoting *Black v. Ritchey*, 432 Pa. 366, 370, 248 A.2d 771, 773 (Pa.1968)(further citations omitted)). *See also Symon*

*v. Burger,* 528 N.E.2d 850, 852–53 (Ind.Ct.App.1988)(affirming award of medical expenses and other special damages with no concomitant pain and suffering damages when the evidence of the special damages were in dispute, concluding that "the jury could have *disallowed* a portion of the claimed special damages, but awarded the amount claimed with the intention of making the difference constitute compensation for the plaintiff's pain and suffering and other damages").

We do not mean to suggest that the trial court would necessarily have erred or abused its discretion had it ruled otherwise. The court had discretion to grant appellant's motion for new trial, just as it had discretion to deny it. Under the circumstances attendant here, the resolution of appellant's motion depended intrinsically upon "the judge's evaluation of the character of the testimony and of the trial," and its determination of "the core question of whether justice has been done...." *Buck,* 328 Md. at 57, 612 A.2d 1294 (citations omitted).

In conclusion, we cannot say that the court abused its discretion in denying appellant's motion for new trial.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**