797 A.2d 110

**SOUTHERN MANAGEMENT CORPORATION, et al.,**

v.

**Tamara MARINER.**

**No. 513, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

May 2, 2002.

Robert L. Siems (Niles, Barton & Wilmer, on brief) Baltimore, for appellants.

Robert L. Bredhoff (Stein, Mitchell & Mezines, and Patrick G. Senftle, on brief) Washington, DC, for appellee.

Argued before MURPHY, C.J., and DAVIS and SHARER, JJ.

DAVIS, J.

Appellants Southern Management Corporation and Woodland Landing Limited Partnership appeal from the October 30, 2000 verdict that was returned against them in the Circuit Court for Prince George's County. The jury found in favor of appellee Tamara Mariner, who was awarded $24,565 for past medical expenses, $21,000 for future medical expenses,[1] $10,500 for lost earnings, a stipulated property damage award in the amount of $6,000, and $410,000 in non-economic damages. Appellants contest the admission of certain evidence as well as the failure of the trial court to properly instruct the jury. On November 9, 2000, appellants moved for a judgment

---

1. In her final order, the trial judge found that the jury's award of future medical expenses exceeded the amount likely to be incurred, as supported by the weight of the evidence, and reduced the award to $8,000.

notwithstanding the verdict and for a new trial. Following a hearing, the trial judge (Sherrie Krauser, J.) denied appellants' motions and entered final judgment in an order dated April 11, 2001. It is from the April 11, 2001 order that appellants timely appeal, raising three questions, which we rephrase as follows:

I. Did the trial court err in admitting evidence of previous fires?

II. Did the trial court err in failing to instruct the jury that the mere happening of an accident is not necessarily evidence of negligence?

III. Did the trial court err in not granting appellants' request for a "missing witness" instruction?

We answer appellants' questions in the negative and affirm the judgment of the trial court.

## FACTUAL BACKGROUND

On March 2, 1996, a fire ravaged the Woodland Landing Apartment complex in Greenbelt, Maryland. The fire originated in Saleeta Shields's apartment, which was located on the first floor. The fire spread to the third floor of the building and into appellee's residence. The fire trapped appellee, her son, and their roommate, forcing them to jump from a third-story window. She was compensated by the jury for injuries to property and person attributed to the fire and her escape therefrom.

The central dispute at trial was whether the fire emanated from Shields's stove or her clothes dryer, an appliance with respect to which appellants had a duty. Appellants asserted that the fire originated in the stove where Shields habitually heated potpourri. Appellee successfully argued that it was Shields's blocked exhaust hose that caused the dryer to overheat, combusting residual lint and clothing that was cycling inside it.

The parties agree that appellants have a duty to maintain the clothes dryers at the apartment complex. Initially, the

clogging of the exhaust hose was not in controversy; however, at trial appellants disavowed an earlier stipulation conceding that the hose was significantly clogged, leading the trial judge to deny a motion *in limine* and admit evidence pertaining to two previous fires in Shields's apartment.[2] Appellants never wavered from the contention that, on the night in question, the fire did not start inside the dryer. At trial, it appeared that they would argue that, while a clogged exhaust hose could potentially cause a fire, it did not in the case *sub judice*. Their position, however, evolved into the argument (in part) that the hose in the case at bar was not sufficiently clogged to be the origin of a fire.

In response to this new theory, appellee was permitted to offer evidence of Shields's other clothes dryer fires. Testimony indicated that two other fires occurred inside her dryers. After each of the fires, appellants' agents replaced the damaged machines with new units. The replacements were made in quick fashion and no other remedial steps were taken.[3] Appellee offered several expert witnesses who testified that, in their opinion, the fire in the instant case also issued from the clothes dryer due to the clogged exhaust hose. Appellee did not offer the testimony of Rafael Nieves, who had been listed as an expert by appellee and deposed by both parties.

## LEGAL ANALYSIS

### I

■ Appellants initially contend that the trial court erred in admitting evidence of the two prior clothes dryer fires in Shields's residence. They maintain that the evidence admitted exceeded what was relevant to the issues of causation and negligence and that its admission was, therefore, distracting,

---

2. The first fire occurred in December 1995; the second fire occurred on February 26, 1996.

3. Testimony adduced at trial indicated that the standard of care with respect to dryer replacements mandates that, if a fire has occurred, the exhaust hose should be checked for blockage.

prejudicial, and misleading to the jury. Appellants assert that they were also prejudiced by the fact that the prior fire evidence offered by appellee was inconsistent with the justification that she proffered in response to their motion *in limine*. Appellee's response to the motion was that the evidence was admissible to prove that appellant had notice of a dangerous condition—namely the clogged exhaust vent. Finally, appellants aver that, if they were not unfairly surprised by the manner in which the evidence was used, or, if we conclude that the evidence is relevant, in the alternative, the probative value of the evidence is substantially outweighed by the other considerations enumerated in Maryland Rule 5-403. Appellee counters that, because the two prior fires were so similar to the fire in question in time, place, and circumstance, the evidence was properly admitted, not as direct evidence of negligence, but as evidence that appellants were on notice of the dangerous condition and the dangerous nature of the clogged vent.

The evidence of the two previous fires was the subject of a motion *in limine*, upon which the trial judge reserved her ruling. At the outset of trial, the parties had stipulated that the exhaust vent was clogged. When the stipulation was disputed at trial, however, the following colloquy ensued:

[APPELLEE'S COUNSEL]: ... We agreed to this stipulation. They are now challenging the very evidence which these other two fires would have gone to. And I feel like now our case has been completely emasculated unfairly. They are questioning the bonafideness of whether this is really a clog or not. And the two other fires would have gone right to that....

THE COURT: ... I did not force any stipulation, nor would I have. The only issue was whether or not there needed to be any evidence of that fire. And I said I would wait and see what the evidence was as it came in.... I was not granting or denying the motion *in limine*. I was going to defer that until I heard from your experts. However, now we are in the situation where, if I understand it, [appellee's] contention is that [appellants]

are challenging [the] very existence of the clog.... the point of the stipulation was that there wasn't going to be any contention that that clog didn't exist. Just that that wasn't the cause of the fire. Am I wrong?

[APPELLANTS' COUNSEL]: Yes.

THE COURT: Well, then I have been sandbagged....

. . .

We are no longer talking about just a notice question here. Now it is the question as to whether or not it existed and whether it was as severe and serious and long standing as the [appellee's] experts content [sic] it was.

In our opinion the evidence of the two prior fires was properly admitted to show notice of the clogging and its dangerous nature. The Court of Appeals has held that "... evidence of prior accidents or defects [is] admissible, not only to show notice, but as bearing on the dangerous nature or tendency of the place or appliance involved in the current accident." *Locke v. Sonnenleiter*, 208 Md. 443, 451, 118 A.2d 509 (1955).

The evidence was irrelevant, argue appellants, because the two previous fires involved "... different dryers not involved in this case." We reject that position. The drying units themselves are not consequential—the evidence was properly admitted because the two previous fires in the same apartment involved an apparatus which had been attached to the blocked exhaust hose, i.e., the "dangerous condition." Furthermore, the condition only became the subject of debate once appellants eschewed their previous agreement that the clogging existed. If appellants did not agree that there was a clog, then appellee was entitled to prove it because the clogging was a central tenet in appellee's theory.

In order to present "... evidence as to past accidents, tendencies or defects," there must be a "... similarity of time, place and circumstance" and, in the discretion of the trial court, the evidence must not "... cause an unfair surprise or confusion by raising collateral issues." *Locke*, 208 Md. at 447–48, 118 A.2d 509 (citations omitted). The requisite similarities

existed: all three fires occurred in a four-month period in the same apartment and arguably due to the same circumstance. The prior fire evidence went directly to the point that the clogging was dangerous in nature. Appellee maintained that the clogging was the ultimate cause of the fires. Therefore, that different drying units were attached to the clogged hose is of no consequence because appellee was never asserting that the drying unit was in any way defective, but rather that *any* drying unit attached to the Shields's exhaust hose was a hazard.

Appellants' reliance on *Wise v. Ackerman,* 76 Md. 375, 25 A. 424 (1892), is misplaced. *Wise* is distinguishable from the instant case because it involved two different instrumentalities in the same building. In *Wise,* the plaintiffs attempted to introduce evidence that similar elevators in the same building failed at a prior time. That contention is entirely different from the proposition that the same condition or instrumentality caused three accidents. Furthermore, while "[t]he direct holding [of *Wise* ] is that evidence of other similar occurrences is not admissible to prove that the accident occurred by the negligence of the defendant and without the fault of the plaintiff," *Locke,* 208 Md. at 448, 118 A.2d 509, that holding has been qualified:

> [T]his is not analogous to the case of an attempt to affect a defendant with knowledge of a negligent habit of an employee . . . nor to that of a case of a latent defect in machinery, or want of repair in a road or bridge, and the simple fact of *a* former accident is allowed to be proved as a means of affecting the defendant with, or bringing home to him, knowledge of such supposed negligent habit, or defect or want of repair.

*Wise,* 76 Md. at 391, 25 A. 424. Appellant cannot compare the case at bar to other decisions that merely hold evidence of similar accidents inadmissible when the same machinery or condition is not at issue.[4]

---

4. Likewise, appellants' reliance on *Smith v. Hercules Co.,* 204 Md. 379, 104 A.2d 590 (1954), is also incorrect. *Smith* also deals with an

■ Appellants complain that they were surprised by the manner in which the prior fire evidence was offered. They cite *Baltimore Transit Co. v. Mezzanotti,* 227 Md. 8, 13–14, 174 A.2d 768 (1961), for the proposition that a party litigant must disclose facts to his or her adversary in order to eliminate the possibility of a party coming "... to trial in a confused or muddled state of mind, concerning the facts that gave rise to the litigation." *Mezzanotti* is inapplicable here because appellants effectively aver that appellee should reveal her argument. In the case at bar, the facts at issue were so well known that they were the subject of a motion *in limine* and extended colloquy on and off the record.[5] Appellee is certainly under no duty to disclose how she is going to employ evidence. In addition, her proffered reasoning also changed once appellants altered their position with respect to the clog; the evidence then assumed new import.

Appellants also direct us to Maryland Rule 5–703, asserting that,

> ... when an expert opinion is based in part on facts that are reliable, but not admissible, the trial court may not admit [it] for the purpose of allowing the jury to assess the expert's opinion unless it determines that the probative value for this limited purpose substantially outweighs the prejudicial effect.

This is a correct statement of the law, but the evidence concerning the other fires was not admitted for the purpose of evaluating testimony; rather, it was admitted to demonstrate that there was a latent, dangerous condition of which appellants had notice.

■ It is also true that, if a showing of substantial similarity has been made, the trial judge must weigh possible

---

attempt to admit evidence of other accidents when the circumstances surrounding the accidents were not identical.

5. At one point, the trial judge and counsel allude to previous discussions on this issue that had taken place and are now being preserved for the record.

prejudice from the evidence of prior occurrences against any factors favoring admission. *See Rye v. Black & Decker Manufacturing Co.*, 889 F.2d 100 (6th Cir., 1989). Nevertheless, a trial court is given significant deference in its determination that probative evidentiary value outweighs any danger of prejudice. *Smallwood v. Bradford*, 352 Md. 8, 27, 720 A.2d 586 (1998). Notwithstanding, the *Rye* case deals with a situation in which the trial court found that there was no substantial similarity and the court was concerned that the jury would be confused as to the conclusion that it should draw from the evidence. In the case *sub judice*, there was a substantial similarity and the evidence was being offered for a specific proposition. We defer to the trial court's determination that the probative value of the prior evidence of fires was paramount.

■■ Finally, appellants argue that the amount of money awarded to appellee, in light of the disputed facts, proves that the jury was misled or confused. "The case of *Kirkpatrick v. Zimmerman*, 257 Md. 215, 262 A.2d 531 (1970), illustrates that it is not the function of an appellate court to second-guess a jury's award of damages so long as there is evidence in the record that supported the verdict." *Butkiewicz v. State*, 127 Md.App. 412, 425, 732 A.2d 994 (1999). While *Butkiewicz* does not speak directly to appellants' position, it still applies. We will not question the jury's determination where there is ample evidence in the record to support the award. We are unpersuaded that the award in the case at bar indicates that the jury was in any way misled or confused.

## II

■ Appellants maintain that the case at bar is precisely the type that warrants a "mere happening" jury instruction. The instruction informs the jury that the mere happening of an accident is not evidence of negligence. In other words, not every accident was caused by a negligent act. Appellants urge us to require the instruction despite the fact that the Court of Appeals has cautioned against using the "mere

happening" instruction. *Kennelly v. Burgess,* 337 Md. 562, 578, 654 A.2d 1335 (1995). We decline to do so.

While appellants are correct that *Ristaino v. Flannery,* 317 Md. 452, 564 A.2d 790 (1989), would support the use of a "mere happening" instruction in the instant case, subsequent decisions convince us otherwise. *Ristaino* delineates three situations in which the mere happening instruction is appropriate; the second subset is applicable to the case at hand: "There can be a second subset in which the primary facts are in dispute, and, consequently, the availability of an inference or presumption of negligence is also in dispute." *Ristaino,* 317 Md. at 460–61, 564 A.2d 790. In the case *sub judice,* appellants would have the jury believe that the fire originated in a wholly different place from where appellee alleges. Because they avow that the fire emanated from the stove and not the clothes dryer, they maintain that the fire occurred independent of any negligence on their part. Alternatively, appellants allege that the fire occurred due to the negligence of Shields. There truly are "... in a sense, two different accidents involved, depending upon whose testimony the jury believes." *Id.* at 461, 564 A.2d 790. Appellants, however, have overlooked a critical distinction. They are not arguing that the fire was not the result of negligence, but that it was the result of the negligence of someone else. The mere happening instruction, therefore, is inapplicable in the instant case because appellants do not argue that the accident occurred without negligence. The mere happening instruction guards against the situation in which a jury finds negligence simply because there was an accident, not the situation in which a litigant alleges that negligence on the part of another party caused the accident.

Furthermore, a trial court is by no means bound to give a requested instruction. Pursuant to Maryland Rule 2–520(c), "[t]he [c]ourt need not grant a requested instruction if the matter is fairly covered by instructions actually given." "A number of Maryland cases also assert the proposition that specifically requested jury instructions are unnecessary where the instructions given adequately encompass the field of law

and a party's counsel has room to argue applicable law in light of the facts of the case." *Dover Elevator Co. v. Swann*, 334 Md. 231, 258–59, 638 A.2d 762 (1994)(commenting on instructing the jury about *res ipsa loquitur*). The jury was adequately charged that appellants might not be negligent and that, before it was to consider any liability issues, it must make the threshold determination that appellant was negligent. In the opinion of the Court of Appeals, the mere happening instruction is often "superfluous" and confusing. *Kennelly*, 337 Md. at 578, 654 A.2d 1335. The trial court did not err in declining to give the mere happening instruction because it is disfavored, cumulative, and, arguably, inapplicable to the case at hand.

## III

■ Appellants' final contention is that the trial court erred in not charging the jury with the "missing witness" instruction. The missing witness instruction informs the jury that, if a party fails to call an available witness, it is permitted, but not required, to draw an inference that the witness's testimony would have been damaging to that party. The issue arises in the instant case because Nieves was deposed and his name was read during *voir dire*. Appellants argue that they were prejudiced by the omission of the instruction because, they say, Nieves's testimony was withheld because it differed from the testimony of John Thurber, who was one of appellee's experts at trial. We are unpersuaded.

■ We have held that "[t]he missing witness instruction is not appropriate where the witness is equally available to the other side." *Hayes v. State*, 57 Md.App. 489, 494–95, 470 A.2d 1301 (1984). Appellants deposed Nieves, were in possession of his contact information, and could have subpoenaed him. For the instruction to be warranted, the missing witness must be in the "peculiar control" of one party. *Id.* Additionally, a party is not required to call a witness whose testimony will be merely cumulative. *Id.* at 496, 470 A.2d 1301 (citations omitted).

In the case *sub judice,* appellants contend that there was a "significant difference" between Nieves's testimony and the testimony of Thurber. We disagree. The essential determination was that the fire originated from inside the clothes dryer. The fact that Nieves opined that the fire started in the lower right quadrant of the machine and Thurber believed that the fire started in the lint trap is inconsequential. So long as neither expert would testify that the fire started outside the dryer, where the fire began inside the dryer is not a crucial determination.

We have held:

The failure to grant an affirmative instruction does not remove the availability of the inference. As a consequence, whatever prejudice may usually come from not giving an advisory instruction is diminished, because the inferential thought process is still available. The prejudice is simply that such an inference is not given preferred instructional attention over any other inferences available from the testimony or absence of testimony.

*Bing Fa Yuen v. State,* 43 Md.App. 109, 113–14, 403 A.2d 819 (1979). *Bing Fa Yuen* is particularly illuminating concerning the meaning of "peculiarly available." In that case, the witness in question refused to speak to one party's attorney prior to trial, however, she was available through the State's Attorney's Office and could have been subpoenaed to testify at trial. In *Bing Fa Yuen,* we held that a witness will be presumed ". . . 'equally available' . . . unless appellants showed the court below that they had exhausted the avenues available to them to produce her." *Id.* at 112, 403 A.2d 819 (citation omitted). The missing witness instruction is only applicable to situations in which ". . . the testimony or evidence [is] material, noncumulative [sic] and the witness [is] 'peculiarly' available." *Id.* at 114, 403 A.2d 819. The trial judge is afforded discretion in instructing the jury about inferences to be drawn because, "[i]n most instances, emphasis of one possible inference out of all the rest by a trial judge can be devastatingly influential upon a jury although unintentionally so." *Id.* The witness in the case at bar is not peculiarly available to one side or the

other and his testimony would be cumulative as to the material determination. Furthermore, the trial court indicated that appellants were free to argue any inferences, to call Nieves, or to use his deposition to contradict appellee. The trial court was correct in not charging the jury with the missing witness instruction.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**